**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11 CASE** |
| | § | |
| **EDEN HOME, INC.** | § | **CASE NO. 18-50608-CAG** |
| | § | |
| **Debtor.** | § | |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

Eden Home, Inc., dba EdenHill Communities, (the "Debtor"), as debtor and debtor- in-possession files this *Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral; (II) Granting Adequate Protection; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Motion") requesting that the Court enter an order pursuant to §§ 105, 361, and 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the use of cash collateral, as that term is defined in § 363(a) of the Bankruptcy Code (the "Cash Collateral"), of UMB Bank, N.A. in its capacity as successor bond trustee under the loan documents described below (the "Bond Trustee"), and granting related relief. Contemporaneously with the filing of this Motion, the Debtor has filed the *First Day Declaration of Laurence P. Dahl* (the "Dahl Declaration"), which contains additional background information on the Debtor and its operations and is incorporated herein by reference.

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are §§ 105(a), 361, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, L. Rules 4001 and 9013 of the Bankruptcy Local Rules for the Western District of Texas (the "Bankruptcy Local Rules"), and the United States Bankruptcy Court for the Western District of Texas Procedures for Complex Chapter 11 Cases (the "Complex Case Procedures").

## II. BACKGROUND

### A. Description of the Debtor

3. On March 16, 2018 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its properties as debtor and debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108. No trustee or examiner has yet been appointed in this chapter 11 case (the "Case"), and no committees have been appointed or designated by the United States Trustee.

4. The Debtor is a not for profit corporation,[1] doing business as EdenHill Communities in New Braunfels, Texas. The Debtor provides quality senior healthcare and retirement housing. The Debtor's current campus was opened in 1956, and began doing business in its current form in 2009.

---

[1] The Debtor is exempt from federal income tax as a charitable organization described under § 501(c)(3) of the Internal Revenue Code.

5. The Debtor's facilities include approximately 103 new independent living apartment-style residences, 47 independent living cottages, 37 assisted living units, 30 memory support assisted living units, and 184 skilled nursing beds.

**B. Asserted Pre-Petition Secured Claims**

6. To finance the construction of the units for these skilled nursing beds and other improvements, the Debtor borrowed the proceeds of $52,500,000 in first mortgage revenue bonds (the "Bonds"), issued by Red River Health Facilities Development Corporation ("Red River") and loaned by Red River to the Debtor. *See* Dahl Declaration at ¶ 15. The Bonds are evidenced by (i) that certain *Master Trust Indenture, Deed of Trust and Security Agreement* (as supplemented, the "Master Indenture"), dated as of February 1, 2012, between the Debtor and UMB Bank, N.A. (successor-in-interest to The Bank of New York Mellon Trust Company, National Association), as master trustee (the "Bond Trustee"), and (ii) the *Indenture of Trust*, dated as of February 1, 2012, between Red River and the Bond Trustee. *Id*. The proceeds of the Bonds were loaned to the Debtor pursuant to the Loan Agreement (the "Loan Agreement"), dated as of February 1, 2012, between the Debtor and Red River. *Id*. Pursuant to the Loan Agreement and the Master Indenture, the Bonds are direct obligations of the Debtor. *Id*. Although the Bonds began to amortize in December 2016, no principal payments have been made, and therefore, the entire $52,500,000 principal amount remains outstanding, together with accrued and unpaid interest. *Id*.

7. The Debtor's obligations under the Master Indenture are secured by a lien against, and security interest in, the Debtor's real and personal property, respectively, as described in the Master Indenture. *See* Dahl Declaration at ¶¶ 15-16. Upon information and belief, the Master Indenture as originally drafted and as supplemented was properly recorded in the real property

records for Comal County, Texas, thereby perfecting a lien on the real property pledged therein. Further, upon information and belief, a financing statement under chapter 9 of the Texas Business and Commerce Code relating to the security interests granted under the Master Indenture was also properly filed in the office in the Texas Secretary of State, perfecting those security interests in almost all of the Debtor's other property. *Id.* In addition, pursuant a *Forbearance Agreement* dated November 13, 2015, the Debtor entered into deposit account control agreements with Bond Trustee, thereby creating perfected security interests in certain of the Debtor's deposit accounts at various third-party financial institutions, upon information and belief. *Id.* Based on this, the Debtor believes that substantially all of the cash (other than trust funds) being obtained, held, and spent by the Debtor in its ordinary operations constitutes the Cash Collateral of the Bond Trustee.[2] *Id.*

    C. **Use of Cash Collateral**

8. Through this Motion, the Debtor seeks authority to use the Cash Collateral of Bond Trustee in accordance with the budget attached hereto as **Exhibit A** (the "Cash Collateral Budget") and for authority to grant replacement liens to Bond Trustee on post-petition assets of the Debtor to the same extent and priority as its pre-petition liens and on all other assets (excluding any actions under Chapter 5 of the Bankruptcy Code) of the Debtor, as adequate protection for any diminution in the value of Cash Collateral and other prepetition collateral resulting from the Debtor's use thereof. The Debtor cannot operate without the use of Cash Collateral, and the expenses set forth in the Cash Collateral Budget are appropriate and necessary

---

[2] As mentioned in the *Emergency Motion for Order (I) Authorizing the Debtor to Continue to Operate the Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue to Perform Intercompany Transactions* (the "Cash Management Motion"), the Debtor does hold some funds owned by its residents in trust for those residents. This does not constitute "Cash Collateral."

for the Debtor to preserve its going concern value and the value of its bankruptcy estate. *See* Dahl Declaration at ¶ 22. The replacement liens being granted to the Bond Trustee adequately protect the Bond Trustee from the potential diminution in the value of the Bond Trustee's interest in the Cash Collateral caused by the Debtor's use of that Cash Collateral pursuant to the Cash Collateral Budget. *Id.*

### III. RELIEF REQUESTED

9. By this Motion, pursuant to 11 U.S.C. §§ 105, 361, and 363, and Bankruptcy Rules 2002, 4001, 6003 and 6004, the Debtor seeks, among other things, the following:

a. authorization for the Debtor to use Cash Collateral and the granting of adequate protection to Bond Trustee and for, among other things, such use of Cash Collateral and all any diminution in value of its interest in Cash Collateral, whether existing on the Petition Date or arising pursuant to this Order;

b. pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of the this Order;

c. authorization to vacate the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order;

d. that this Court schedule a final hearing (the "Final Hearing") to consider entry of a Final Order authorizing the use of Cash Collateral and the grant of adequate protection on a final basis; and,

e. waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

### IV. BASIS FOR EMERGENCY RELIEF

10. The Debtor brings this Motion on an emergency basis given the immediate and irreparable harm that the Debtor will potentially suffer if it is denied the ability to use Cash Collateral, which is necessary to sustain ongoing business operations to procure goods and

services from vendors, pay its employees and satisfy other working capital needs, through the operation of the Cash Management System, and to continue to care for its residents and patients.

11. Absent the continued use of Cash Collateral, the Debtor would likely have to cease business operations to the material detriment of its residents and patients, other creditors, stakeholders, and other parties in interest. Therefore, the Debtor needs to ensure the availability of such working capital now. This liquidity is particularly necessary for the Debtor to demonstrate to its residents and patients, regulators, suppliers, vendors, and stakeholders that the Debtor will be able to continue operating properly notwithstanding its bankruptcy filing, and can adequately fund its reorganization process.

V. **Applicable Authority**

A. **Adequate Protection and Cash Collateral**

12. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or court approval. *See* 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. *See* 11 U.S.C. § 363(e).

13. At this time, the Bond Trustee consents to the Debtor's use of its Cash Collateral in the Case upon the terms and conditions of the Proposed Order attached hereto as **Exhibit B**. Recognizing the need to access cash, the Debtor engaged in discussions with the Bond Trustee through their respective counsel regarding the consensual use of Cash Collateral. The parties reached an agreement, the terms of which are set forth in the Proposed Order. The Debtor submits that the treatment proposed herein and in the Proposed Order is sufficient to adequately protect the Bond Trustee's interests in the Cash Collateral.

14. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987) (citing *In re Martin*, 761 F.2d 472 (8th Cir. 1985)); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D. N.Y. 1996); *In re Realty Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D. N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725 (Bankr. S.D. N.Y. 1986). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D. N.Y. 1992); *In re Beker*, 58 B.R. at 736; *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D. N.Y. 1996).

15. The Bond Trustee assert liens on the Cash Collateral. As adequate protection for the use of the Cash Collateral, the parties agree to the following forms of adequate protection ("Adequate Protection"), to the extent of any diminution in value of the Cash Collateral of the other prepetition collateral securing Bond Trustee's claims:

a. Authorization to Use Cash Collateral. The Debtor shall be authorized to use Cash Collateral solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget; provided, however, that the Debtor shall have authority to use Cash Collateral in excess of the amounts set forth in the Cash Collateral Budget to the extent such a variance does not constitute a Termination Event (as defined in paragraph 15 of the Proposed Order).

b. Duration. The Debtor's authorization to use Cash Collateral shall last until the earlier of (i) a Termination Event (as defined in paragraphs 15 or 16 of the Proposed Order) or (ii) the last day included in the Cash Collateral Budget.

c. Adequate Protection. The Debtor shall provide the Bond Trustee with the following forms of adequate protection (collectively, the "Adequate Protection") for any diminution in the value of the Cash Collateral and the other Prepetition Bond Collateral (as defined below) resulting from the Debtor's use thereof after the Petition Date ("Diminution"):

  i. Replacement Lien: The Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "Replacement Lien") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Prepetition Bond

      Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the Bond Trustee as of the Petition Date (the "<u>Postpetition Bond Collateral</u>"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, exclusive of causes of action under Chapter 5 of the Bankruptcy Code and proceeds thereof (the "<u>Supplemental Collateral</u>" and, collectively with the Postpetition Bond Collateral, the "<u>Collateral</u>").

  ii.  <u>Status of Replacement Lien</u>. The Replacement Lien shall be in addition to all other rights of the Bond Trustee, including the Bond Trustee's liens and security interests in the Prepetition Bond Collateral. The Replacement Lien shall be subject and subordinate to the Carve Out (as defined below) and any valid and perfected liens existing on the Petition Date ("<u>Prior Liens</u>").

  iii.  <u>Superpriority Claim</u>. As additional adequate protection for any Diminution, the Bond Trustee shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code with recourse to and payable from any and all assets of the Debtor's estate, including but not limited to rights of the Debtor, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual that for any reason cannot be made the subject of the Replacement Lien (the "<u>Secured Party Superpriority Claim</u>"). The Secured Party Superpriority Claim shall be subject only to Prior Liens and the Carve Out (as defined below) and shall have priority, pursuant to Section 507(b) of the Bankruptcy Code, over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in Section 503(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Bankruptcy Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

  iv.  <u>Financial Information</u>. The Debtor shall allow the Bond Trustee and its professionals and designees reasonable access, during normal business hours and on not less than three business days' prior notice, to the premises of the Debtor in order to conduct appraisals, analyses, and/or audits of the Prepetition Bond Collateral and the Collateral, and shall otherwise reasonably cooperate in providing any other financial information reasonably requested by the Bond Trustee for this purpose. From and after the entry of the Proposed Order, the Debtor shall provide to the Bond Trustee once each week (commencing with the second week after the Petition Date), a

weekly report certified by the Debtor's chief financial officer and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget and detailing any variances of more than 10% and at least $10,000 from the expenditures and receipts in the Cash Collateral Budget. The Debtor and its professionals shall be available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the Bond Trustee to discuss the results of operations and other matters pertaining to the Community and this Bankruptcy Case. The Debtor shall provide to the Bond Trustee such other reports and information as the Bond Trustee may reasonably request from time to time

v. <u>Compliance With Bond Documents</u>. The Debtor shall comply with those terms and provisions of the Bond Documents set forth on **Schedule B** attached to the Proposed Order. The requirements of the Proposed Order shall be in addition to, and not in substitution for, the terms and provisions of the Bond Documents set forth on **Schedule B**.

vi. <u>Prohibited Use of Cash Collateral</u>. Except as expressly provided in the Proposed Order, no Cash Collateral or proceeds thereof shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Bond Collateral, the Bond Claim, or any liens or security interests with respect thereto, or any other rights or interests of the Bond Trustee therein or in the Bond Trustee Funds; (ii) asserting any claims or defenses or causes of action arising out of, based upon, or related to, in whole or in part, the Bonds or the Bond Documents, against the Bond Trustee, the Bondholders in their capacity as such, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; or (iii) paying any material amounts on account of claims arising before the Petition Date, except to the extent provided for in the Cash Collateral Budget and approved by the Court.

vii. <u>Termination of use of Cash Collateral</u>.

1. Termination with Notice. Under the Proposed Order, a Termination Event shall be deemed to have occurred five (5) business days after written notice sent by the Bond Trustee to the Debtor, its counsel, and the United States Trustee of the occurrence of any of the following:

   a. the payment of any expenses that would cause: (x) aggregate expenditures under the Cash Collateral Budget to exceed one hundred five percent (105%) of the total budgeted expenses for that same Measuring Period (as defined below), or (y) expenditures under a single line item of the Cash Collateral Budget to exceed one hundred ten percent (110%) of the amount budgeted

for that same line item for that same Measuring Period. This variance shall be measured, on a rolling four week period (the "Measuring Period"); provided, however, that for purposes of calculating such variances, (i) the first Measuring Period shall be the one week after the Petition Date and the first week of the Cash Collateral Budget, (ii) the second Measuring Period shall be the two weeks after the Petition Date and the first two weeks of the Cash Collateral Budget, (iii) the third Measuring Period shall be the three weeks after the Petition Date and the first three weeks of the Cash Collateral Budget, and (iv) the fourth Measuring Period shall be the first four weeks after the Petition Date and the first four weeks of the Cash Collateral Budget. Any budgeted expenditures not paid in a particular budget period may be paid during a subsequent period and, for the purpose of calculating rolling four week variances set forth above, the Cash Collateral Budget will be revised to move such expenditures to the later period, it being understood that such later period can be outside the four-week period. Expenditures may be paid in an earlier period in the reasonable discretion of the Debtor, in which event, the Cash Collateral Budget shall be deemed amended to move the expenditure into the week of the actual expenditure for the purpose of calculating rolling four week variances set forth above. The Debtor will provide to the Bond Trustee a written explanation in reasonable detail explaining the amount of and the reason for the prepayment or delay in payment;

b. the failure of the Debtor to pay, within ten (10) days of the applicable due date, all undisputed administrative expenses in full in accordance with their terms as provided for in the Cash Collateral Budget except for any expenses under sections 503(b)(9) or 546(c) of the Bankruptcy Code;

c. the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930; and

d. the failure of the Debtor to comply with, keep, observe, or perform any of its agreements or undertakings under the Proposed Order.

Unless the Debtor has cured the such termination events specified in the Bond Trustee's notice prior to the expiration of the five (5) business day period (the "Default Notice Period") described above or obtained an order of this Court, on notice to and with the opportunity to be heard by the Bond Trustee, that no such Termination Event has occurred, the Debtor's authority to use Cash Collateral shall terminate immediately at the expiration of the Default Notice Period, without prejudice to the Debtor seeking an order of this Court to use Cash Collateral on a non-consensual basis. During the Default Notice Period, the Debtor may request (and the Bond Trustee agrees not to oppose) an emergency hearing before the Court, with proper notice to the Bond Trustee, to contest the alleged occurrence or continuation of a Termination Event. The Bond Trustee

shall have the power to waive any termination event set forth above in its sole discretion without further order of the Court.

2. Termination of Use of Cash Collateral Without Prior Notice. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a termination event shall occur without prior notice, upon the occurrence of any of the following (also a "Termination Event"):

   a. the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

   b. the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application, or other pleading consenting to or acquiescing in any such appointment;

   c. this Court suspends the Bankruptcy Case under Section 305 of the Bankruptcy Code;

   d. this Interim Order becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of the Bond Trustee;

   e. an order is entered in the Bankruptcy Case over the objection of the Bond Trustee approving financing pursuant to Section 364 of the Bankruptcy Code that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the Bond Trustee under this Interim Order;

   f. an adversary proceeding or contested matter is commenced or joined by the Debtor challenging the amount, validity, enforceability, priority, or extent of the Bond Trustee's liens, security interests, or claims;

   g. the Court fails to enter a Final Order allowing the Motion, on terms acceptable to the Bond Trustee, on or before April [●], 2018.

Upon the occurrence of one of these termination events, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate, without prejudice to the Debtor seeking an order of this Court to use Cash Collateral on a non-consensual basis. The Bond Trustee shall have the power to waive any termination event set forth above in its sole discretion without further order of the Court.

      viii. <u>Professional Carveout</u>. In partial consideration of the Debtor's acknowledgement of the debt due and owing and the Debtor's waiver of any claims under Section 506(c) of the Bankruptcy Code (upon entry of the Final Order), the Bond Trustee consents to certain expenses and professional fees incurred during the pendency of this Bankruptcy Case that shall be superior in all instances to the liens and claims of the Bond Trustee and all other parties (the "<u>Carve Out</u>"). For purposes hereof, the "Carve Out" means (a) the fees and expenses of professionals retained by the Debtor and any statutory committee in an aggregate amount not to exceed the sum of: (i) the dollar amount of such fees and expenses to the extent (A) incurred or accrued prior to a Termination Event and remaining unpaid, (B) provided for under the Cash Collateral Budget, (C) previously or subsequently allowed by Court order; and (D) for which no retainer is available to pay such fees and expenses; plus (b) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court. Nothing herein shall constitute a waiver of any right of the Bond Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid. The entry of a Final Order shall be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against the Bond Trustee or the Prepetition Bond Collateral or the Collateral under Section 105 of the Bankruptcy Code or, subject to entry of the Final Order, Section 506(c) of the Bankruptcy Code, or otherwise.

The foregoing is only a summary. The terms of the Debtor's use of the Cash Collateral are set forth in detail in the attached Proposed Order. In the event of any inconsistency between the above summary and the Proposed Order, the terms of the Proposed Order shall control. Interested parties should review the Proposed Order for a complete and accurate understanding.

    **B.    The Use of Cash Collateral is Necessary to Preserve Assets of the Estate**

    16.    It is essential that the Debtor immediately instill its residents, regulators, vendors, service providers, and customers with confidence in its ability to transition its business smoothly to the chapter 11 process and to operate normally in that environment. The use of Cash Collateral is necessary to continue, among other things, the orderly operation of the Debtor's business.

    **C.    Interim Approval Should be Granted**

17. Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use cash collateral may not be commenced before fourteen (14) days after the service of that motion. Fed. R. Bankr. P. 4001. This Court may, however, conduct a preliminary hearing before the expiration of that fourteen-day period and likewise authorize the use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and irreparable harm to the debtor's estate.

18. In examining requests under this Bankruptcy Rule, courts apply the business-judgment standard as is applicable in other business decisions. *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). Without the continued use of cash collateral, the Debtor will have no ability to operate its business. Among other things, the Debtor will not be able to pay its vendors, fund its payroll, or pay for the professional services necessary to successfully reorganize the business, each of which is necessary to ensure undisrupted service to its residents. The Debtor's failure to honor any of these obligations will cause immediate and irreparable harm to the Debtor's estate. The Debtor submits that, for the reasons set forth herein, the immediate use of Cash Collateral, on an interim basis, as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtor's business and its bankruptcy estate.

19. Moreover, the Debtor's ability to finance its operations and the availability to the Debtor of sufficient working capital and liquidity through the use of cash collateral is critical to the confidence of the Community's residents and to the Debtor's employees and suppliers, and to the preservation and maintenance of the going-concern value of the Debtor's estate. The Debtor requests that the Court conduct an emergency preliminary hearing on the Motion and authorize the Debtor's, from and after the entry of the Interim Order until a Final Hearing on the relief requested herein, to use Cash Collateral, as necessary. Such authorization will ensure the Debtor

maintains ongoing operations and avoids immediate and irreparable harm and prejudice to its estate and all parties in interest pending the Final Hearing.

### D. Request for a Final Hearing

20. As noted above, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully requests that the Court sets a date for the Final Hearing at the earliest date and time of the Court's convenience that will ensure adequate notice and due process to all parties-in-interest in these cases.

21. The Debtor respectfully requests that it be authorized to a serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on the Notice Parties (defined below) and to any other party that has filed a request for notices with this Court and to any Committee or Committee Counsel, if same shall have filed a request for notice. The Debtor respectfully requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

## VI. CONFERENCE WITH SECURED PARTY

22. Counsel for the Debtor and the Bond Trustee have conferred on the relief requested herein. The parties agree to the Debtor's use of Cash Collateral under the terms requested herein.

## VII. CHECKLISTS

23. The *Checklist for Lengthy Motions and Orders Pertaining to Cash Collateral and Post-Petition Financing*, including the *Debtor's Comments to Cash Collateral and DIP Financing Checklist*, in a format conforming to Exhibit J of the Bankruptcy Local Rules is attached hereto as **Exhibit C**.

## VIII. NOTICE

24. No trustee, examiner, or statutory creditors' committee has been appointed in this Chapter 11 case. This Motion has been provided to: (i) the Office of the United States Trustee for the Western District of Texas; (ii) UMB Bank, N.A., as Bond Trustee; (iii) counsel to the Bond Trustee; (iv) the twenty (20) largest unsecured creditors of the Debtor's bankruptcy estate; (v) Debtor's secured creditors; (vi) the Internal Revenue Service; (vi) the United States Department of Health and Human Services; (vii) Texas Health and Human Services; (viii) Red River Health Facilities Development Corporation; (ix) Centers for Medicare and Medicaid Services; (x) the Texas Attorney General; and (xi) all parties in interest who have formally appeared and requested notice pursuant to Rule 2002. The Debtor respectfully submits that no further notice of this Motion is required.

### IX. CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of an order granting Interim use of Cash Collateral, setting a Final Hearing on the Debtor's use of Cash Collateral, and granting all other and further relief as is just and proper.

Dated: March 16, 2018          Respectfully submitted,

**DYKEMA COX SMITH**
1717 Main Street, Suite 4200
Dallas, TX 75201
Phone: (214) 462-6400
Fax: (214) 462-6401

By: /s/ *Mark E. Andrews*
Mark E. Andrews (TX Bar No. 01253520)
mandrews@dykema.com
Aaron M. Kaufman (TX Bar No. 24060067)
akaufman@dykema.com
Andrew Sherwood (TX Bar No. 24033061)
asherwood@dykema.com
Jesse T. Moore (TX Bar No. 24056001
jmoore@dykema.com

**PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 15, 2018, I conferred with Kevin Epstein for the United States Trustee regarding the relief requested in this Motion. Mr. Epstein expressed no position and reserved his right to object at the hearing.

           */s/ Mark Andrews*
Mark Andrews