**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11 CASE** |
| | § | |
| | § | **CASE NO. 18-50608-cag-11** |
| **EDEN HOME, INC.** | § | |
| | § | |
| Debtor. | § | |

**APPLICATION FOR APPROVAL OF THE EMPLOYMENT OF**
**LANGLEY & BANACK, INC. AS SPECIAL COUNSEL FOR THE DEBTOR,**
***NUNC PRO TUNC* TO MARCH 16, 2018**

Eden Home, Inc. dba EdenHill Communities, (the "Debtor" or "Eden Home"), Debtor and Debtor-in-Possession in the above captioned case (the "Case"), hereby files this *Application for Approval of the Employment of Langley & Banack, Inc. as Special Counsel for the Debtor, Nunc Pro Tunc to March 16, 2018* (the "Application") requesting that the Court enter an order pursuant to sections 327, 328, 330, and 1107 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 2014, 6003, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of the Application, the Debtor relies upon the *Declaration of William W. Sommers in Support of Application for Approval of Employment of Langley & Banack, Incorporated as Special Counsel for the Debtor* Nunc Pro Tunc *to March 16, 2018* (the "Sommers Declaration") attached here to as **Exhibit A**. Concurrently with this Application, the Debtor files the *Motion for Expedited Hearing on Application for Approval of the Employment of Langley & Banack, Inc. as Special Counsel for the Debtor, Nunc Pro Tunc to March 16, 2018* (the "Motion to Expedite"). The Debtor presents this Application and respectfully states as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this chapter 11 case pursuant to 28 U.S.C. § 1334(b). This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A). The Court has authority to enter a final order granting relief pursuant to 28 U.S.C. § 157(b)(1). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327, 328, 330 and 1107 of the Bankruptcy Code; Bankruptcy Rules 2002, 2014, 6003 and 6006; L. Rule 2014 of the Bankruptcy Local Rules for the Western District of Texas (the "Bankruptcy Local Rules"); and the United States Bankruptcy Court for the Western District of Texas Procedures for Complex Chapter 11 Cases (the "Complex Case Procedures").

## II. PROCEDURAL AND FACTUAL BACKGROUND

*A. Procedural History of the Bankruptcy Case*

3. On March 16, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its assets and is managing its businesses as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed and no official committee has been established in this case.

4. On March 20, 2018, the Court held an expedited hearing on the Debtor's *Second Amended Motion to Modify Stay to Permit Continuation of Pending Lawsuit*.

5. On March 21, 2018, the Court held an expedited hearing on the Debtor's First Day Motions.

*B. The Debtor's Background and Affiliations*

6. Established in 1910, the Debtor has been serving the New Braunfels community and surrounding areas by providing quality senior healthcare and retirement housing since 1956.

Prior to 2009 the Debtor was operated as Eden Home, Inc. The Debtor now does business as EdenHill Communities.

7. The current campus was opened in 1956 in New Braunfels, Texas. While the Debtor has provided senior living and health care services for more than 100 years, it has not historically provided continuing care contracts and therefore was not subject to oversight and regulation by the Texas Department of Insurance.

8. In 2009, the Debtor began doing business as Eden Hill Communities. In 2013, the Debtor began offering continuing care contracts.

9. The Debtor is a non-profit corporation. It is exempt from federal income tax as a charitable organization as described under section 501(c)(3) of the Internal Revenue Code of 1986, as amended. It is governed by a volunteer board of directors and officers (the "Board").

10. Eden Home is affiliated with the South Central Conference of the United Church of Christ (the "SCCUCC") and its Council for Health and Human Services Ministries. However, the SCCUCC is not in any way responsible for the financial and contractual obligations of Eden Home.

11. Eden Home has three affiliated non-profit organizations, (i) Eden-Cross Apartments, Inc. ("Eden-Cross"); (ii) Hilltop Pharmacy, Inc. ("Hilltop Pharmacy"); and (iii) Eden Heights, Inc. ("Eden Heights"). The Executive Committee of the Board ("Executive Committee") serves as the board for both Eden-Cross and Hilltop Pharmacy. The Eden Heights board is the Executive Committee plus two residents from the Eden Heights community. Eden-Cross and Eden Heights are financially separate from the Debtor. Hilltop pharmacy operates a service for the residents of the Debtor by providing pharmaceuticals.

L & B 18972/0003/L1428644.DOCX/APPLICATION FOR APPROVAL OF THE EMPLOYMENT OF LANGLEY & BANACK, INC. AS SPECIAL COUNSEL
4852-2635-9907.8
723813\000005

PAGE 3 OF 17

C. *Eden Home's Facilities and Services*

12. Eden Home is located on approximately fifteen (15) acres on Lakeview Boulevard in New Braunfels, Texas. The original facilities were constructed on this property in 1956. Additional facilities were added in the 1970s and 1980s. In 2008, Eden Home added an additional eight cottages to the property. Eden Home added independent living apartments in 2013 and additional facilities in 2015.

13. As of the Petition Date, Eden Home offers the following facilities to its long-term and short-term residents:

   a. 103 Independent Living Apartment-Style Residences (the "Pinnacle"): The Pinnacle opened in 2013. The Pinnacle's apartments range in size from 713 to 1,849 square feet, with one and two bedroom configurations. Each apartment contains a full kitchen and one or two bathrooms. Prior to taking occupancy, residents of the Pinnacle must fund a deposit with Eden Home based upon the size of their unit. These deposits are refundable in amounts and or terms that vary by the size of the unit and the individual contract.

   b. 47 Independent Living Cottages (the "Cottages"): The Cottages are located in Eden Home's village (the "Village").

   c. 37 Assisted Living Units ("Assisted Living"): The Assisted Living suites from 250 to 540 square feet, and include efficiency and one bedroom configurations. Each has a kitchenette and full bathroom.

   d. 30 Memory Support Assisted Living Units ("Memory Support"): The units in Memory Support range from 287 to 353 square feet.

   e. 184 Skilled Nursing Beds (the "Health Center"): Nursing care is provided to resident of the Health Center. It includes approximately sixty (60) private beds and one hundred twenty (120) semi-private beds. The semi-private suites are approximately 300 square feet. The new private suites are each approximately 286 square feet and include a full private bathroom. The newest part of the Health Center opened in 2015.

D. *Eden Home's Bond Debt*

14. To finance and refinance a portion of the cost of the completion of the acquisition, construction, furnishing and equipping of the Pinnacle, a portion of the Health Center, and other improvements (the "Project"), Eden Home borrowed the proceeds of $52,550,000 in first

mortgage revenue bonds (the "Bonds"), issued by Red River Health Facilities Development Corporation ("Red River") and loaned by Red River to Eden Home. The Bonds are evidenced by (i) that certain *Master Trust Indenture, Deed of Trust and Security Agreement* (as supplemented, the "Master Indenture"), dated as of February 1, 2012, between Eden Home and UMB Bank, N.A. (successor-in-interest to The Bank of New York Mellon Trust Company, National Association), as master trustee (the "Master Trustee"), and (ii) the *Indenture of Trust*, dated as of February 1, 2012, between Red River and the Master Trustee. The proceeds of the Bonds were loaned to Eden Home pursuant to the Loan Agreement (the "Loan Agreement"), dated as of February 1, 2012, between Eden Home and Red River. Pursuant to the Loan Agreement and the Master Indenture, the Bonds are direct obligations of Eden Home. Although the Bonds began to amortize in December 2016, no principal payments have been made, and therefore, the entire $52,550,000 principal amount remains outstanding, together with accrued and unpaid interest.

15. Eden Home's obligations under the Master Indenture are secured by a lien against, and security interest in, Eden Home's real and personal property, respectively, as described in the Master Indenture. Upon information and belief, the Master Indenture as originally drafted and as supplemented was properly recorded in the real property records for Comal County, Texas, thereby perfecting a lien on the real property pledged therein. Further, upon information and belief, a financing statement under chapter 9 of the Texas Business and Commerce Code relating to the security interests granted under the Master Indenture was also properly filed in the office in the Texas Secretary of State, perfecting those security interests in almost all of the Debtor's other property. In addition, pursuant a *Forbearance Agreement* dated November 13, 2015, the Debtor entered into deposit account control agreements with Bond

Trustee, thereby creating perfected security interests in certain of the Debtor's deposit accounts at various third-party financial institutions, upon information and belief.

### E. Events Leading to the Bankruptcy Filing

16. In 2012, Eden Home contracted with J. E. Dunn Construction (the "Contractor") for construction of the Project. Before the Project was completed, Eden Home discovered substantial defects in the construction. Efforts to correct the defective construction resulted in delays in the opening of the Project for occupancy and additional construction and renovation expenses to Eden Home. The Contractor unilaterally terminated the contract related to the Project prior to the completion of the Project and brought suit against Eden Home and its Executive Director/CEO, Larry Dahl in Comal County.[1] *See J.E. Dunn Const. Co. v. Eden Home, Inc.*, Cause No. C-2015-0183D, pending in the 433rd Judicial District in Comal County, Texas (the "Construction Lawsuit"). Eden Home filed counter-claims against the Contractor and Zurich American Insurance Company, which issued the builder's risk insurance policy, to recover its losses. Various counter-claims and third-party claims have also been raised in the Construction Lawsuit. Non-binding mediation with the Zurich American Insurance Company began on March 16, 2018 in the Construction Lawsuit. A global mediation for all parties in the case is scheduled for May 21, 2018.

17. The loan documents evidencing the Bonds contain certain liquidity covenants, including a covenant to maintain cash above certain thresholds and a covenant to maintain cash levels above an established multiple of daily cash expenses. Following the construction delays, construction defects and attendant losses, Eden Home did not have sufficient liquid assets to meet these liquidity covenants. The lack of liquid assets has also impeded Eden Home's ability

---

[1] The Contractor later dismissed all individual claims against Mr. Dahl.

to effectively efficiently manage its cash for operations and to pay interest and principal due on the Bonds. Eden Home and the Master Trustee, on behalf of the holders of the Bonds, have entered into various forbearance agreements, which have included, among other concessions, a process for the sale, affiliation or refinancing transaction. Efforts to consummate that process have been hindered by the continuing presence of construction defects and the Construction Lawsuit. The forbearance agreements have expired by their terms and the Master Trustee has indicated that the holders of the Bonds will imminently direct the Master Trustee to exercise remedies as a result of the existing defaults.

### IV. RELIEF REQUESTED

18. By this Application, the Debtor seeks, as of the Petition Date, to employ and retain Langley & Banack, Inc. ("Langley Banack" or the "Firm"), as special counsel for the Debtor in the Construction Lawsuit (i) to defend the Debtor against claims, payable by the Debtor's insurance at an hourly rate, and (ii) to prosecute the Debtor's affirmative claims on a contingency basis. Neither representation in the Construction Lawsuit includes the representation of the Debtor in conducting this chapter 11 case.

19. In compliance with L. Rule 2014(b)(1), the Debtor provides the following information relevant to Langley Banack:

William W. Sommers, Shareholder
Langley & Banack, Inc.
745 East Mulberry Ave., Suite 700
San Antonio, TX 78212
WSommers@langleybanack.com
Phone: 210-736-6600
Fax: 210-735-6889

L & B 18972/0003/L1428644.DOCX/APPLICATION FOR APPROVAL OF THE EMPLOYMENT OF LANGLEY & BANACK, INC. AS SPECIAL COUNSEL
4852-2635-9907.8
723813\000005

PAGE 7 OF 17

*A. Debtor's Affirmative Claims – Contingency Employment*

20. Prior to the Petition Date, the Debtor engaged Marc. E. Gravely at Gravely & Pearson, L.L.P. ("Gravely & Pearson") and William W. Sommers at Langley Banack to represent it in the Construction Lawsuit on a contingency basis. Mr. Sommers was employed at The Gardner Law Firm (the "Gardner Firm") at the time of his and Mr. Gravely's original employment by the Debtor. In January 2016, Mr. Sommers left the Gardner Firm and joined Langley Banack. Under Mr. Sommers' termination agreement, the Gardner Firm retains no further interest in the attorneys' fees paid under the engagement agreement with the Debtor. Debtor acknowledges it retained Gravely & Pearson and Langley Banack in a joint arrangement pre-petition. *See* Exhibit B. In compliance with section 504 of the Bankruptcy Code, and through this Application, the Debtor requests the Court permit it to employ Langley Banack under a separate employment agreement for the post-petition period. The Debtor requests it be permitted to apply the previous employment terms for each firm as set forth in the Pre-Petition Engagement Letter, defined below. *Id*.

21. As described in the pre-petition engagement letter (the "Pre-Petition Engagement Letter"), the Debtor agreed to pay Gravely & Pearson "forty percent (40%) of any recovery or value received or a reasonable hourly fee awarded by the fact finder, whichever is greater." *See* Pre-Petition Engagement Letter, attached as **Exhibit B**, at p. 2. In addition, Gravely & Pearson agreed to "advance all expenses incurred in the prosecution of this claim and the defense of the claims against" the Debtor. *Id*. These expenses "shall be deducted from the recovery after the calculation of [the] percentage of attorney's fees." *Id*. The Pre-Petition Engagement Letter also set forth that Gravely & Pearson would pay the Gardner Firm "a fee of twenty percent (20%) of the attorney's fees received by Gravely & Pearson." *Id*. at p. 3.

22. The Debtor executed a second agreement pre-petition with Gravely & Pearson describing the payment obligations related to the employment of a forensic auditor (the "Forensic Auditor Agreement"). The Forensic Audit Agreement is attached to this Application as **Exhibit C**.

23. Per this agreement, Gravely & Pearson agreed to pay "50% of the cost of the forensic audit engagement for the forensic audit engagement for the audit of the Guaranteed Maximum Price contract and related project accounting between Eden Home, Inc. and J. E. Dunn Construction." *See* Exhibit C. In addition, that fifty percent (50%) "will be paid from [Gravely & Pearson's] contingent fee (40% of gross)." *Id.*

24. The Debtor's continued employment of Langley Banack is appropriate and necessary to ensure the Debtor appropriately recovers (i) for the Contractor's substantial defects in the construction, and (ii) its additional, related claims.

25. Through the Firm's pre-petition representation of the Debtor's affirmative claims, Mr. Sommers has acquired special knowledge of the Debtor's history and the Construction Lawsuit. The Firm's experiences will prove beneficial, and its continued retention is in the best interest of the Debtor and its estate. Critically, the Firm will not be responsible for the core bankruptcy work in this Case. The Debtor thus requests the Court's approval of the employment of Langley Banack as special litigation counsel under sections 327(e) and 328(a) of the Bankruptcy Code.

### B. *Debtor's Defense of Claims brought by JE Dunn – Hourly Employment*

26. During the pre-petition period, but subsequent to the retention of William W. Sommers in the Pre-Petition Engagement Letter with the Debtor, the Debtor made a request for coverage under its Officer's Directors' insurance policy for a defense of the affirmative claims

by JE Dunn against Eden Home. Arch Insurance Company assigned the defense of the case to William Sommers both at the Gardner Firm and Langley Banack (after his departure from the Gardner Firm) pursuant the description set for in Sections 39 to 42 below.

27. As described in detail below, Langley Banack remains a beneficial owner of this pre-petition claim for its defense work. However, this claim does not disqualify the Firm from being employed for the special purposes set forth herein pursuant to section 327(e) of the Bankruptcy Code, because the circumstances leading to the Firm's potential lack of disinterestedness arise solely from its pre-petition claim.[2] The Debtor thus requests the Court's approval of the employment of Langley Banack as special litigation counsel under section 327(e) of the Bankruptcy Code.

## V. ARGUMENTS AND AUTHORITIES

### A. *Hourly Employment by Arch Insurance Company*

28. Section 327(e) of the Bankruptcy Code provides that, with the Court's approval, the Debtor "may employ, for a specified special purpose, other than to represent the [Debtor] in conducting the case, and if such attorney does not represent or hold any interest adverse to the [Debtor] or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). The Debtor is unaware of any interest Langley Banack holds that would be adverse to its role as special litigation counsel for which the Debtor seeks to employ it.

29. This "Circuit has adopted the following definition of 'represent or hold any interest adverse to the debtor or to the estate':

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

---

[2] See generally Klaas Talsma, 436 B.R. 908, 914 (Bankr. N.D. Tex. 2010).

> (2) possess a predisposition under circumstances that render such a bias against the estate."

*In re AGE Ref., Inc.*, 447 B.R. 786, 802 (Bankr. W.D. Tex. 2011). In the Debtor's case, Langley Banack's role as special counsel in the Construction Lawsuit is aligned with the Debtor's interest. Both the Debtor and special counsel will benefit upon a successful conclusion of the Construction Lawsuit.

30. In addition, Texas bankruptcy courts have held that a professional may continue doing work for the estate, despite holding a claim where the professional's services are not central to the administration of the bankruptcy estate. *See generally Klaas Talsma,* 436 B.R. 908, 914 (Bankr. N.D. Tex. 2010) ("the more sensible interpretation of *section 1107(b)* is that Congress intended to allow employment by a debtor in possession of its prepetition professionals 'in spite of' *section 327(a)*--i.e., regardless of whether they held claims against the debtor in possession so long as the otherwise disqualifying fact is necessarily coupled to the professional's prepetition employment") (footnotes omitted).

## B. Contingency Employment by the Debtor

31. In addition, the Debtor seeks approval of the employment of Langley Banack, and the fee structure as described in Exhibit B related to Mr. Sommers' compensation. For clarity, Langley Banack will receive eight percent (8%) "of any recovery or value received or a reasonable hourly fee awarded by the fact finder, whichever is greater." Exhibit B, at p. 2. Pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtor, as trustee, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the

compensation of professionals, including special counsel, on more flexible terms that reflect the nature of their services and market conditions. As the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present §330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present §328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d. 861,862 (5th Cir. 1997) (internal citations and emphasis omitted).

32. Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a), which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

See 11 U.S.C. § 328(a). Section 328(a), as amended, makes clear that a trustee, or a debtor-in-possession, may retain, subject to bankruptcy court approval, a professional on a fee basis like the fee structure with Langley Banack as proposed by the Debtor herein.

33. The Debtor submits that the fee structure constitutes reasonable terms and conditions of employment in light of the following: (a) the nature and scope of services to be provided by Langley Banack; (b) market rates charged for comparable services both in and out of the chapter 11 context; and (c) Langley Banack's substantial experience related to and their familiarity with the Construction Lawsuit

L & B 18972/0003/L1428644.DOCX/APPLICATION FOR APPROVAL OF THE EMPLOYMENT OF LANGLEY & BANACK, INC. AS SPECIAL COUNSEL
4852-2635-9907.8
723813\000005

PAGE 12 OF 17

34. The Debtor has considered, inter alia, the following factors: (a) the experience and level of expertise of Langley Banack and (b) Langley Banack's familiarity with the Construction Lawsuit.

35. The Debtor believes that the requested compensation for Langley Banack constitutes reasonable terms and conditions of employment and should be approved under Section 328(a).

### VI. CONNECTIONS WITH THE DEBTOR, CREDITORS AND OTHER PARTIES-IN INTEREST

36. Langley Banack has queried its available information on the Debtor, its affiliated corporations and subsidiaries, the individual directors or principals of the Debtor, the twenty largest unsecured creditors of the Debtor's estate, and those other creditors who have filed lawsuits against the Debtor. The results of this inquiry revealed no conflicts of interest which would prevent Langley Banack from serving as the Debtor's special litigation counsel.

37. The Debtor does not believe that the proposed retention of Langley Banack will be duplicative of the services to be provided by its co-counsel, Gravely & Pearson, or the Debtor's proposed bankruptcy counsel, Dykema Cox Smith. To the contrary, retention of Langley Banack, will save the estate money by avoiding Dykema Cox Smith attorneys from having to handle the Construction Lawsuit with which Langley Banack is already intimately familiar.

38. Langley Banack's compliance with the requirements of sections 327, 328, 330 and 504 of the Bankruptcy Code and Bankruptcy Rule 2014 is set forth in detail in the Sommers Declaration attached as Exhibit A.

### VII. PROPOSED ARRANGEMENT FOR COMPENSATION FROM ARCH INSURANCE COMPANY

39. For its pre-petition legal services, the Debtor has incurred approximately $56,145.00 in fees and $9,214.29 in expenses owing to Langley Banack which has been or will

be paid by Arch Insurance Company under a separate assignment of the defense of the claims by JE Dunn in the State Court litigation under an insurance policy. On information and belief, Langley Banack neither demanded nor received a retainer as a condition of its post-petition services. As a result, the Firm is not holding any funds of the Debtor or its bankruptcy estate as security for future legal services. The source of the compensation paid to the Firm will be derived from the amount recovered from the Construction Lawsuit. Langley Banack has not agreed to share the above-disclosed compensation with any additional person or firm, including Gravely & Pearson.

40. Subject to Court approval and in accordance with section 330(a) of the Bankruptcy Code and Bankruptcy Rule 2016, Langley Banack will charge the Debtor's insuring company for its services on an hourly basis pursuant to its agreed rates with the insuring company's rates for matters of this type in effect on the date such services are rendered. In addition, Langley Banack shall seek reimbursement of actual, necessary expenses incurred in connection with the Construction Lawsuit in the same manner subject to review and approval by Arch. The scope of Langley Banack's work will be limited to advising the Debtor on the Construction Lawsuit and related matters and serving suggestions of bankruptcy in the pre-bankruptcy lawsuits where Langley Banack served as co-counsel for the Debtor.

> The primary individuals within Langley Banack who will represent Debtor and their hour rates for the defense of the affirmative claims as alleged by JE Dunn against the Debtor and as previously made the subject of the Joint Agreement between Arch Insurance Company and William Sommers of Langley & Banack formerly with the Gardner Firm are set forth below: William Sommers, Shareholder $250.00 per hour
>
> *Sylvia Cardona, Shareholder* $225.00 per hour
>
> *Thomas Lillibridge, Law Clerk* $75.00 per hour

*Rebecca Wahl, Paralegal*            *$ 75.00 per hour*

41. The hourly rates set forth above are Langley Banack's agreed hourly rate for work of this nature resulting from assignments from insurance companies for defense work. These rates are set at a level designed to fairly compensate the Firm for its work and to cover fixed and routine overhead expenses.

42. These same individuals will represent the debtor as co-counsel on the affirmative claims along with Gravely & Pearson on the affirmative claims of the Debtor against JE Dunn on a contingency basis as set forth in Exhibit B attached hereto.

43. It is Langley Banack's policy, in all areas of its practice, to charge clients for additional expenses incurred in connection with the client's case. The expenses charged to Langley Banack's clients include, among other things, postage and express mail charges, special or hand delivery charges, external photocopying charges at the actual cost charged, travel expenses, expenses for "working meals," and computerized research. Langley Banack does charge for travel time, as allowed by the Billing Guide lines of Arch Insurance Company long distance calls other than conference calls, or incoming and outgoing telecopier services. Langley Banack will charge Arch Insurance for expenses in a manner and at rates consistent with charges made under Arch Insurance Company's billing Guidelines with the applicable rules of this Court and United States Trustee guidelines.

## VIII. NOTICE

44. The Debtor has caused a copy of this Application to be served on its limited service list, which includes the United States Trustee. The Debtor submits that no other or further notice need be provided.

## IX. PRAYER FOR RELIEF

WHEREFORE, the Debtor respectfully requests that the Court enter an order authorizing and directing the Debtor to employ Langley Banack as special litigation counsel *Nunc Pro Tunc* to March 16, 2018 (i) under 11. U.S.C. § 327(e) for Langley Banack's representation of Debtor's defense claims to be paid at an hourly rate by Arch Insurance Company, and (ii) under 11 U.S.C. § 328 for Langley Banack's representation of the Debtor's affirmative claims to be paid by contingency fee arrangement upon the resolution of the Construction Lawsuit. Additionally, the Debtor seeks such other or further relief to which it may be justly entitled.

Dated: May 1, 2018,   Respectfully submitted,

**DYKEMA COX SMITH**
1717 Main Street, Suite 4200
Dallas, TX 75201
Phone: (214) 462-6400
Fax: (214) 462-6401

By: /s/ *Mark E. Andrews*
Mark E. Andrews (TX Bar No. 01253520)
mandrews@dykema.com
Aaron M. Kaufman (TX Bar No. 24060067)
akaufman@dykema.com
Andrew Sherwood (TX Bar No. 24033061)
asherwood@dykema.com
Jesse T. Moore (TX Bar No. 24056001)
jmoore@dykema.com

**PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

## **CERTIFICATE OF SERVICE**

    I hereby certify that true and correct copy of the foregoing document was filed with the Bankruptcy Court via CM/ECF on May 1, 2018, and served on all parties listed on the attached limited service list, including the United States Trustee, pursuant to Bankruptcy Rule 9034(f).

                                       */s/ Mark Andrews*
                                       Mark E. Andrews