## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11 CASE** |
| **EDEN HOME, INC.,** | § § | **CASE NO. 18-50608-cag-11** |
| **Debtor.** | § § § | |

## EDEN HOME, INC.'S AMENDED CHAPTER 11 PLAN OF REORGANIZATION

**DYKEMA GOSSETT LLP**

Mark E. Andrews (State Bar No. 01253520)
Andrew G. Sherwood (State Bar No. 24033061)
Aaron M. Kaufman (State Bar No. 24060067)
Jane A. Gerber (State Bar No. 24092416)
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400
(214) 462-6401 (Fax)
mandrews@dykema.com
asherwood@dykema.com
akaufman@dykema.com
jgerber@dykema.com

**ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION**

Dated: April 29, 2019

## INTRODUCTION

Eden Home, Inc. ("Eden" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case pending before the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), hereby proposes *Eden Home, Inc.'s Amended Chapter 11 Plan of Reorganization* (the "Plan") for the resolution of the outstanding claims against and interests in the Debtor. Capitalized terms used herein shall have the meanings ascribed to such terms in ARTICLE I.

*Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited until such time as a Disclosure Statement has been approved by the Bankruptcy Court. In this case, the Bankruptcy Court has not yet approved the Debtor's Disclosure Statement. Upon the Bankruptcy Court's approval of the Debtor's Disclosure Statement by an order entered on the docket, the Debtor will distribute the Disclosure Statement simultaneously with a copy of this Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, a discussion of the Debtor's history, business, property and operations, projections or range of projected recoveries for parties-in-interest, risk factors, a summary and analysis of this Plan, and certain related matters including, among other things, the forbearance agreement between the Debtor and the Bond Trustee.*

***ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO READ THIS PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.***

*Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019, the Debtor expressly reserves its respective rights to alter, amend, modify, revoke or withdraw this Plan, one or more times, prior to its substantial consummation.*

4820-7175-7460.3
723813\000005

## EDEN HOME, INC.'S CHAPTER 11 PLAN OF REORGANIZATION

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.      Definitions.**

For purposes of this Plan, except as otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meaning set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or Bankruptcy Rules, will have the meaning given to the term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1     **"Accounts Receivable"** means all rights, titles and interests in the Debtor's accounts receivable.

1.2     **"Administrative Expense Claim"** means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor (including wages, salaries, and commissions for services rendered after the Petition Date), (b) Professional Fee Claims, and (c) all fees and charges assessed against the Estate under title 28 of the United States Code to the extent not already paid or satisfied under the terms of the operative Plan.

1.3     **"Administrative Tax Claim"** means a Claim by a governmental unit for taxes (and for interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.4     **"Adversary Proceedings"** means the three (3) adversary proceedings associated with the Debtor's Bankruptcy Case: (i) *Texas Health and Human Services Commission vs. UMB Bank, N.A. and Eden Home, Inc.*; Case No. 18-5230; (ii) *Texas Department of Insurance vs. Eden Home, Inc.*; Case No. 18-5236; and (iii) *The Texas Attorney General on behalf of the public interest in charity vs. UMB Bank, N.A.*; Case No. 18-5243.

1.5     **"Affiliate"** has the meaning given such term by section 101(2) of the Bankruptcy Code.

1.6     **"Allowed"** when used with respect to all or any part of a Claim or Interest, means:

(a)      if no proof of claim has been timely filed, such amount of the Claim or group of Claims which has been Scheduled by the Debtor as liquidated in amount and not disputed or contingent and as to which no party in interest has filed an Objection before the Claims Objection Deadline or such other time fixed by the Bankruptcy Court, and which Claim is not disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(b)       if a proof of claim has been filed by the Claims Bar Date, or is deemed timely filed by the Bankruptcy Court pursuant to Final Order, such amount of the Claim as to which any party in interest has not filed an Objection before the Claims Objection Deadline or such other time fixed by the Bankruptcy Court and which Claim is not Disallowed under section 502(d) or (e) of the Bankruptcy Code; or

(c)       that has been allowed by a Final Order of the Bankruptcy Court; or

(d)       that is expressly allowed in a liquidated amount in this Plan.

**1.7       "Asset" or "Assets"** means all assets of the Estate as of the Effective Date including "property of the estate" as described in section 541 of the Bankruptcy Code.

**1.8       "Assisted Living"** means the thirty-seven (37) one bedroom and efficiency configurations at the Debtor's Facilities that allows residents to receive more care and assistance than those residents in the Independent Living units at EdenHill.

**1.9       "Assumed Contract"** means either an Executory Contract or an Unexpired Lease that is designated for assumption by the Debtor and assigned to the Reorganized Debtor pursuant to Section 9.1 of this Plan.  The list of Assumed Contracts shall be provided in the Plan Supplement.

**1.10       "Avoidance Actions"** means Causes of Action arising under sections 502, 510, 541, 542, 543, 544, 545, 547 through 551 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action, and which may be recovered pursuant to section 550 of the Bankruptcy Code.

**1.11       "Bankruptcy Case" or "Case"** means the bankruptcy case under chapter 11 of the Bankruptcy Code, pending in the Bankruptcy Court under Case No. 18-50608 and caption *In re Eden Home, Inc.*

**1.12       "Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., including all amendments thereto, to the extent such amendments are applicable to the Bankruptcy Case.

**1.13       "Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

**1.14       "Bankruptcy Rule" or "Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended and applicable to the Bankruptcy Case.

**1.15       "Ballot"** the formal ballot included in the solicitation packets and disseminated with the Disclosure Statement to Holders of Impaired Claims entitled to vote on this Plan.

**1.16       "Board" or "Board of Directors"** means the volunteer board of directors and officers of Eden Home, Inc.  This includes each individual who has served on the Board (a) prior

to the Petition Date; (b) as of the Petition Date, and (c) during the course of the Bankruptcy Case, including the Effective Date of this Plan.

**1.17** **"Bond Documents"** mean (i) the Bond Indenture, (ii) the Master Indenture, (iii) that certain Loan Agreement dated as of February 1, 2012 between the Issuer and the Debtor, (iv) that certain Forbearance Agreement dated November 13, 2015 by and between the Debtor and the Bond Trustee, and (v) any other document or agreement delivered as security for, or in respect to, the Bonds or the Debtor's obligations under any of such documents.

**1.18** **"Bond Indenture"** means that certain Indenture of Trust dated February 1, 2012 between the Issuer and the Bond Trustee, pursuant to which the Issuer issued the Bonds for the benefit of the Debtor.

**1.19** **"Bond Trustee"** means UMB Bank, N.A., in its capacity as successor bond trustee under the Bond Indenture.

**1.20** **"Bondholder"** means the Holder(s) of the Bonds.

**1.21** **"Bonds"** means the $52,550,000 of Red River Health Facilities Development Corporation First Mortgage Revenue Bonds (Eden Home, Inc. Project) Series 2012 bonds issued pursuant to the Bond Indenture.

**1.22** **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.23** **"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**1.24** **"Causes of Action"** means any and all of the Debtor's rights, actions, claims, causes of action, and suits, including accounts, Accounts Receivable, Avoidance Actions, Preference Actions, controversies, agreements, promises, rights to legal or equitable remedies, damages, rights to payment for amounts owed by any Person for any reason, and claims of the Estate, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise. Unless released by Prior Order of the Bankruptcy Court or under this Plan, all such Causes of Action will be reserved under this Plan and assigned to the Reorganized Debtor.

**1.25** **"CCRC"** means a Continuing Care Retirement Community.

**1.26** **"Chapter 11 Case"** means this Bankruptcy Case.

**1.27** **"Claim"** or **"Claims"** means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.28** **"Claimant"** means the Holder of a Claim.

**1.29** **"Claims Bar Date"** means the general deadline of March 17, 2019 for filing proofs of claim unless otherwise extended by Final Order of the Bankruptcy Court. Residents residing at the Pinnacle and the Cottages with Claims based solely upon their respective Resident Agreements do <u>not</u> need to file Claims. In the event this Plan is not confirmed, a bar date for Residents residing at the Pinnacle and the Cottages having claims based solely upon their respective Resident Agreements will be set and issued to those Residents at a later time.

**1.30** **"Claims Objection Deadline"** means the first Business Day that is at least thirty (30) days from the Confirmation Date, or such later date as established by the Bankruptcy Court. With respect to Late Filed Claims filed after the Claims Bar Date, the Claims Objection Deadline means the first Business Day that is at least 30 (thirty) days after the entry of a Final Order deeming a Late Filed Claim to be timely.

**1.31** **"Class"** when referring to a Claim means a category of Holders of Claims as described in ARTICLE III of this Plan.

**1.32** **"Collateral"** means any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

**1.33** **"Committee"** means any statutory committee appointed pursuant to section 1102(a) of the Bankruptcy Code in this Case. The U.S. Trustee filed a *Notice of Appointment of Committee of Unsecured Resident Creditors* in the Bankruptcy Case as Docket Entry Number 157.

**1.34** **"Committee of Unsecured Resident Creditors"** or **"Residents' Committee"** means the committee of the Debtor's residents, as appointed by the United States Trustee.

**1.35** **"Confirmation Date"** means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.36** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.37** **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.38** **"Construction Lawsuit"** means the litigation between Eden Home, Inc. and J.E. Dunn Construction Company, and additional parties, in Comal County, Texas (*J.E. Dunn Const. Co v. Eden Home, Inc.*, Cause No. C-2015-0183D) concerning substantial defects following J.E. Dunn's construction project at EdenHill. The parties settled their suit and the Bankruptcy Court entered its *Order Granting Joint Motion to Approve Proposed Compromise* in the Bankruptcy Case at Docket Entry Number 295.

**1.39** **"Cottages"** means, collectively, the 47 (forty-seven) stand-alone independent living homes located on the campus of EdenHill. When occupied, each tenancy is governed by a Resident Agreement between Eden Home, Inc. and the resident(s) occupying each cottage. The

Cottages make up a community at EdenHill referred to as the Village. Cottage residents may choose to purchase full-service packages similar to those offered to residents of the Pinnacle.

1.40 **"Court"** or **"Courts"** means the Bankruptcy Court or the United States District Court for the Western District of Texas, or both courts collectively.

1.41 **"Creditor"** means a "creditor" as defined in section 101(10) of the Bankruptcy Code.

1.42 **"Critical Vendor Order"** means the *Order Granting Motion (I) Designating Critical Vendors, and (II) Authorizing the Debtor to Pay Certain Pre-Petition Claims* entered by the Court in the Bankruptcy Case as Docket Entry Number 159. The Critical Vendor Order authorized the Debtor to pay up to 100% of each critical vendor's claim and agree to Customary Trade Terms (as that term is defined in the Critical Vendor Order) with these critical vendors.

1.43 **"Cure Amount"** or **"Cure Claim"** with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, means the amount equal to all unpaid monetary obligations required to be paid as a condition to the assumption of such agreement pursuant to the provisions of section 365 of the Bankruptcy Code, without interest, or such other amount as may be agreed upon by the Reorganized Debtor and the parties under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.44 **"Cushman & Wakefield"** means Cushman &Wakefield, U.S., Inc. the real estate broker the Debtor employed during the Bankruptcy Case, along with San Antonio Commercial Advisors.

1.45 **"Debtor"** means Eden Home, Inc., doing business as "EdenHill" and "EdenHill Communities" in New Braunfels, Texas.

1.46 **"Disallowed"** when used with respect to all or any part of a Claim or Interest, means, that portion of the Claim that (a) has been disallowed by a Final Order or pursuant to a settlement, or (b)(i) is Scheduled at zero or as contingent, disputed or unliquidated and (ii) as to which a Claims Bar Date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.47 **"Disclosure Statement"** means the written statement, as amended, supplemented, or modified from time to time, describing this Plan that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.48 **"Disputed Claim"** means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, any Claim (a) that is listed in the Schedules of the Debtor as disputed, contingent, or unliquidated; (b) that is listed in the Schedules of the Debtor as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent the proof of claim amount exceeds the Scheduled amount or asserts a different priority of payment from that reflected in the Schedules; (c) that is not listed in the Schedules of the Debtor, but as to which a proof of claim

has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) for which the proof of claim is filed after the Claims Bar Date.

1.49    **"Distribution"** means a payment by the Debtor or Reorganized Debtor in full or partial satisfaction of an Allowed Claim and the obligations imposed under this Plan.

1.50    **"Distribution Date"** means: (i) with respect to a Claim to which an Objection was timely filed, the first Business Day that is at least ten (10) days after such Claim becomes an Allowed Claim, unless otherwise ordered by the Bankruptcy Court; and (ii) with respect to all other Claims to which no Objection is timely filed, the Plan's Effective Date, or as soon as reasonably possible.

1.51    **"Dykema"** means Dykema Gossett LLP, formerly doing business as Dykema Cox Smith, counsel to the Debtor and Debtor-in-Possession.

1.52    **"EdenHill"** or **"EdenHill Communities"** means the names often used to describe the CCRC operated by Eden Home, Inc.

1.53    **"Effective Date"** means the first Business Day after the Confirmation Date if the Confirmation Order is not stayed, or if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is the first Business Day which is after the Confirmation Date, and upon which all conditions to the effectiveness of this Plan set forth in ARTICLE XII below are satisfied.

1.54    **"Entity"** or **"Entities"** has the meaning given such term in section 101(15) of the Bankruptcy Code.

1.55    **"Entrance Fee"** means entrance fees which are payable to the Debtor by a Resident under the terms of its Resident Agreement prior to moving into a unit at the Pinnacle or into a Cottage at EdenHill.

1.56    **"Estate"** means the bankruptcy estate of the Debtor as created under section 541 of the Bankruptcy Code.

1.57    **"Estate Defenses"** means any defense or affirmative defense available to the Debtor or the Estate, including without limitation the assertion of any Causes of Action as offsets or counterclaims and any right of offset or recoupment, or any other basis for Objection to a Claim, whether legal or equitable.  The Reorganized Debtor shall have standing to and shall otherwise be entitled to assert any and all Estate Defenses after the Effective Date.

1.58    **"Estate Funds"** means the Cash balance and any other funds held by the Debtor (including any unearned Retainers) on the Effective Date, which shall be deemed transferred to and vested in the Reorganized Debtor on the Effective Date.

1.59    **"Executory Contract"** means an agreement where both parties have additional performance obligations which if unperformed would result in a breach of the agreement, as applicable under section 365 of the Bankruptcy Code.

**1.60** **"Exculpated Claim"** means any claim related to any act or omission in connection with, relating to or arising out of the Debtor's in or out of court restructuring efforts, the Bankruptcy Case, formulation, preparation, dissemination, negotiation or filing of the Disclosure Statement or this Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or this Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of this Plan, the administration and implementation of this Plan, the issuance of the Bonds, the execution and delivery of the Bond Documents, or the distribution of property under this Plan or any other related agreement; **provided, however**, that Exculpated Claims shall not include any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct or fraud to the extent imposed by applicable non-bankruptcy law. For the avoidance of doubt, no Cause of Action, obligation, or liability expressly set forth in or preserved by this Plan or the Plan Supplement constitutes an Exculpated Claim.

**1.61** **"Exculpated Party"** means each of: (a) the Debtor and its member or members; (b) the Reorganized Debtor and its member or members.

**1.62** **"Exhibit"** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**1.63** **"Facility"** or **"Facilities"** means the buildings and land that comprise the Debtor's operations, on approximately fifteen (15) acres in New Braunfels, Texas. The Facilities include, but are not limited to: the Pinnacle, the Cottages, the Health Center, the Memory Care facilities, and the Assisted Living facilities.

**1.64** **"Fee Claim"** means a Claim under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional for services rendered or expenses incurred in the Case on or prior to the Effective Date.

**1.65** **"Final Order"** means an order, decree or judgment of the Bankruptcy Court of another court of competent jurisdiction, the operation or effect of which has not been reversed, stayed, modified or amended, and as to which order, decree or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing has been taken or is pending.

**1.66** **"Forbearance Agreement"** means that certain forbearance agreement between Eden Home, Inc., as Debtor and the Reorganized Debtor, as applicable, and the Bond Trustee, that is to govern the relationship between the Reorganized Debtor and the Bond Trustee as of the Effective Date and Substantial Consummation of this Plan, including the rights and duties of each party. A copy of the Forbearance Agreement will be included as an Exhibit to this Plan.

**1.67** **"General Unsecured Claim"** means a Claim, however arising, including from the rejection of an Executory Contract or an Unexpired Lease, which is not an Administrative Expense Claim, Priority Tax Claim, Administrative Tax Claim, Priority Non-Tax Claim, Secured Claim or Secured Tax Claim to the extent determined to be entitled to priority of distribution, and as classified under Class 3 of this Plan.

**1.68** **"Holder"** means any Entity holding a Claim or an Interest, as applicable.

**1.69** **"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.70** **"Independent Living"** or **"Independent Living Facilities"** means the apartment-style units in the Pinnacle Building and the Cottages at EdenHill.

**1.71** **"Insider"** means an "insider" as defined under section 101(31) of the Bankruptcy Code or applicable case law, whether existing at the time of Confirmation or any time thereafter. When describing a Claim, such term shall mean a Claim held or otherwise asserted by an Insider.

**1.72** **"Interest"** means an equity security in the Debtor as such term is defined in section 101(16) of the Bankruptcy Code.

**1.73** **"Issuer"** means the Red River Health Facilities Development Corporation.

**1.74** **"IRS"** means the Internal Revenue Service of the United States of America.

**1.75** **"Late Filed Claims"** mean any Claim filed after the Claims Bar Date with the express authorization of the Bankruptcy Court.

**1.76** **"Lien"** means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset.

**1.77** **"Master Indenture"** means that certain Master Trust Indenture, Deed of Trust and Security Agreement, dated as of February 1, 2012 (as supplemented), between the Debtor and the Master Trustee.

**1.78** **"Master Trustee"** means UMB Bank, N.A., in its capacity as successor master trustee under the Master Indenture.

**1.79** **"Memory Support"** or **"Memory Support Units"** means the thirty (30) units at EdenHill for residents requiring assistance due to memory issues.

**1.80** **"Non-Insider"** means any Person other than an Insider. When describing a Claim, such term shall mean a Claim held or otherwise asserted by a Non-Insider.

**1.81** **"Notice of Bankruptcy"** means the *Notice of Chapter 11 Bankruptcy Case*, setting the Meeting of creditors and other deadlines, that was entered on the docket in the Bankruptcy Case as Docket Entry Number 21.

**1.82** **"Objection"** includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

**1.83** **"Other Secured Claim"** means a Secured Claim not otherwise classified under this Plan.

1.84 **"Owner Representative"** means Downing Ferguson Peeples, LLC or DFP, LLC, the firm selected and engaged by the Debtor, after consultation with the Bond Trustee and the Residents' Committee, which will represent the Debtor and Reorganized Debtor, as applicable, through the repairs process both pre- and post- Effective Date. The Court has approved the Debtor's retention of Downing Ferguson Peeples, LLC. *See* Docket Entry Number 438. In particular, Downing Ferguson Peeples, LLC's responsibilities include: (a) identifying repairs and improvements to be made to the Facilities, (b) prioritizing such repairs, (c) helping the Debtor, the Reorganized Debtor and Bond Trustee to identify contractors to make such repairs, (d) assisting the Debtor and the Reorganized Debtor in establishing a budget for such repairs, and (e) overseeing these repairs and improvements. These responsibilities will be limited to the deployment of $4,100,000 of the Settlement Proceeds, until and if the Reorganized Debtor and the Bond Trustee agree to employ additional Settlement Proceeds to repairing the Facilities.

1.85 **"Patient Care Ombudsman"** and **"PCO"** refers to the ombudsman appointed to monitor the quality of patient care and to represent the interests of the patients of a health care business pursuant to 11 U.S.C. § 333. The Bankruptcy Court entered it *Order Directing U.S. Trustee to Appoint a Patient Care Ombudsman Under 11 U.S.C. § 333* in the Bankruptcy Case at Docket Entry Number 49. The U.S. Trustee entered its *Notice of Appointment of Patient Care Ombudsman* at Docket Entry Number 52, appointing Susan N. Goodman of Mesch, Clark & Rothschild, P.C. as the PCO in this Bankruptcy Case.

1.86 **"Person"** means an individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other entity.

1.87 **"Petition Date"** means March 18, 2018, the date on which the Debtor filed a voluntary chapter 11 petition.

1.88 **"Pinnacle"** or **"Pinnacle Building"** means the independent living apartment-style residence at EdenHill, consisting of one hundred and three (103) units. The Pinnacle opened in 2013. When a unit is occupied, each tenancy is governed by a Resident Agreement between Eden Home, Inc. and the resident(s) occupying that unit. The Resident Agreements for Pinnacle Residents include a full-service package that entails: food service, housekeeping, utilities, laundry, wellness programing, a healthcare benefit, and other services.

1.89 **"Plan"** means this Chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, supplemented, or modified from time to time.

1.90 **"Plan Documents"** mean any documents related to this Plan, including the Disclosure Statement, Plan Supplements, notices, Ballots and any other written material prepared by the Debtor in connection with this Plan.

1.91 **"Plan Rate"** or **"Plan Interest Rate"** means the judgment rate as set forth in Section 304.003, Texas Finance Code, in effect on the Effective Date or such other rate as approved or ordered by the Bankruptcy Court.

**1.92** **"Plan Supplement"** means the supplement(s) to this Plan containing, among other things, the forms of any organizational documents relevant to the formation of the Reorganized Debtor, trust agreements, and the list of Assumed Contracts.

**1.93** **"Plan Supplement Filing Date"** means the date by which this Plan Supplement, and any Exhibits not filed with this Plan, shall be filed with the Bankruptcy Court, which date shall be at least ten (10) days prior to the Voting Deadline.

**1.94** **"Post-Effective Date Residents' Committee"** means the entity formed under the provisions of this Plan, which entity shall consist of its current members, who shall be former members of the Residents' Committee or their designees, which shall have the powers as set forth in this Plan.

**1.95** "**Preference Action"** means an Avoidance Action pursuant to section 547 of the Bankruptcy Code, including, but not limited to, the avoidance and recovery of any transfer listed in the Statement of Financial Affairs, entered in the Bankruptcy Case as Document Entry Number 145, including any amendment, supplement or attachment thereto.

**1.96** **"Priority Non-Tax Claim"** means a Claim, other than an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority of payment pursuant to section 507(a) of the Bankruptcy Code.

**1.97** **"Priority Tax Claim"** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.98** **"Professional"** means those Persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328 or 1103 of the Bankruptcy Code or who have been employed by a Final Order of the Bankruptcy Court.

**1.99** **"Professional Fee Claim"** means a Professional's request for payment of fees and expenses filed and served in accordance with the Professional Fee Order and the terms of this Plan.

**1.100** **"Professional Fee Order"** means that certain *Order Granting Motion for Administrative Order Under Bankruptcy Code Sections 105(A) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* entered in the Bankruptcy Case as Document Entry Number 135.

**1.101** **"Real Estate Broker"** means Cushman & Wakefield and San Antonio Commercial Advisors, collectively. For clarity, the Debtor has a single *Listing Agreement for Sale* with San Antonio Commercial Advisors, as approved by the Court's Orders at Docket Entry Numbers 171 and 172 in the Bankruptcy Case. The internal arrangement between Cushman & Wakefield and San Antonio Commercial Advisors has been fully disclosed to the Court and parties-in-interest.

**1.102** **"Rejected Contract"** means an Executory Contract or Unexpired Lease entered into by a Debtor prior to the Petition Date that has not been explicitly assumed by that Debtor in

this Plan, Plan Supplement or an order of the Court.  Counterparties to a Rejected Contract are entitled to file a Rejection Claim, as set forth in ARTICLE IX of this Plan.

1.103 **"Rejection Claim"** means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract or Unexpired Lease.

1.104 **"Released Party"** or **"Released Parties"** means, collectively: (a) the Debtor, (b) the Reorganized Debtor, (c) the Board, (d) the Bond Trustee, (e) the Master Trustee, (f) the Bondholders, (g) the Residents' Committee, and (h) solely in their capacity as such, these parties' respective current and former affiliates, subsidiaries, officers, directors, principals, members, employees, agents, financials advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, as set forth in ARTICLE VII, below.

1.105 **"Releasing Parties"** means, collectively: (a) the Released Parties; (b) all Holders of Claims, as set forth in ARTICLE VII of this Plan, who make an election contained on their relevant Ballot; and (c) all Holders of Claims who are deemed to accept this Plan.

1.106 **"Reorganized Debtor"** means the Debtor, Eden Home, Inc., from and after this Plan's Effective Date and the Substantial Consummation of this Plan.

1.107 **"Resident"** means each individual residing at the Debtor's Facilities on the Petition Date, including: the Pinnacle, the Cottages, the Health Center, the Memory Care facilities, and the Assisted Living facilities.

1.108 **"Resident Agreements"** means the various agreements between the Debtor and its residents living in the Pinnacle and the Cottages, pursuant to which the Debtor provides services to those residents.  The Resident Agreements with the Debtor come in seven (7) standard forms with the variations primarily based upon the (i) residence chosen; (ii) services a resident would like the Debtor to provide; and (iii) the size of the resident's deposit and refund.

1.109 **"Retainer"** shall include all retainers or other funds held by any Professional, attorney, accountant appraiser, auctioneer, contract employee, contract manager or other professional person, including, without limitation, Dykema Gossett PLLC.

1.110 **"San Antonio Commercial Advisors"** means CF Commercial Brokerage, LLC d/b/a San Antonio Commercial Advisors, the real estate broker the Debtor employed during the Bankruptcy Case, along with Cushman & Wakefield.

1.111 **"Scheduled"** means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

1.112 **"Schedules"** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been filed in this Case or may be subsequently amended or supplemented.

**1.113 "Secured Claim"** means a Claim that is secured by Lien upon property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claimant's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.114 "Secured Tax Claim"** means a Secured Claim owing to a Taxing Authority.

**1.115 "Securities Act"** means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

**1.116 "Settlement Proceeds"** means the amounts described in that certain *Order Granting Joint Motion to Approve Proposed Compromise*, entered by the Bankruptcy Court on or about August 9, 2018 at Docket Entry Number 295 in the Bankruptcy Case, including but not limited to: (i) $4,100,000.00 (held by the Debtor) for repairs and improvements to the Debtor's Facilities; and (ii) $4,275,000.00 (held by the Bond Trustee) earmarked for possible further repairs, sale, refinancing, or affiliation of the Debtor's Facilities.

**1.117 "Skilled Nursing"** or **"Health Center"** means the one hundred eighty-four (184) beds where EdenHill staff provides nursing care to residents. The Skilled Nursing facility includes approximately sixty (60) private beds and one hundred twenty (120) semi-private beds. The newest part of the Skilled Nursing facility opened in 2015.

**1.118 "Solicitation Order"** means the order that has been or will be entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan.

**1.119 "SOFA" or "Statement of Financial Affairs"** means the Statement of Financial Affairs, including any and all amendments and supplements, filed by each Debtor in the Bankruptcy Case.

**1.120 "Substantial Consummation"** shall have the same meaning as set forth in section 1101(2) of the Bankruptcy Code. Substantial Consummation of this Plan shall be deemed to occur on the Effective Date.

**1.121 "Tax Claim"** shall refer to any Claim for or relating to any type or form of taxes, whether assessed by the United States of America, the IRS or any Taxing Authority, including without limitation property, ad valorem, excise, sales, fuel, income or franchise taxes, and whether the tax is assessed against the Debtor as a taxpayer or as a holder of trust fund taxes.

**1.122 "Taxing Authority"** shall include any state or any subdivision thereof, including without limitation any political subdivision of any state assessing ad valorem taxes against any of the Assets.

**1.123 "Unexpired Lease"** means a lease entered into by a Debtor prior to the Petition Date and has not terminated prior to the Confirmation Hearing. The Unexpired Lease may be assumed by its respective Debtor in this Plan, Plan Supplement or other order of the Bankruptcy

Court.  If the Unexpired Lease is not explicitly assumed on or before the Effective Date, it is deemed Rejected under this Plan.

**1.124  "Unclaimed Property"** means any Cash, Distribution, or any other property of the Reorganized Debtor unclaimed for a period of one (1) year after the applicable Distribution Date.

**1.125  "Unimpaired Claim"** means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.126  "U.S. Trustee"** means the Office of the United States Trustee, or a representative thereof.

**1.127  "U.S. Trustee Fees"** means all fees and charges assessed against the Estate of he Debtor under section 1930, title 28 of the United States Code.

**1.128  "Village"** means the community of the Cottages, the stand-alone independent living homes located on the campus of EdenHill.

**1.129  "Voting Deadline"** means the last Business Day and time for submitting ballots to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code as specified in the Solicitation Order.

**1.130  "Voting Record Deadline"** means the date and time established by the Bankruptcy Court in the Solicitation Order for determining those Claimants entitled to vote on this Plan.

## B.    <u>Rules of Interpretation.</u>

For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit filed or to be filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in this Plan to sections, articles and Exhibits are references to sections, articles and Exhibits of or to this Plan; (e) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect, the interpretation of this Plan; (g) "after notice and a hearing," or a similar phrase has the meaning ascribed in Bankruptcy Code § 102; (h) "includes" and "including" are not limiting; (i) "may not" is prohibitive, and not permissive; (j) "or" is not exclusive; and (k) U.S. Trustee includes a designee of the U.S. Trustee.

## C. Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, AND U.S. TRUSTEE FEES

### 2.1. Administrative Expense Claims.

Subject to the provisions of ARTICLE XI of this Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, and (ii) the date such Administrative Expense Claim becomes payable pursuant to any agreement between the Holder of such Administrative Expense Claim and the Reorganized Debtor, the Holder of each Allowed Administrative Expense Claim, shall receive in full and final satisfaction from the Reorganized Debtor, release, settlement and discharge of such Allowed Administrative Expense Claim: (A) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim; or (B) in accordance with the terms of any written agreement with the Reorganized Debtor regarding such Allowed Administrative Expense Claim; **provided, however**, that each Allowed Administrative Expense Claim with respect to liabilities incurred by the Debtor in the ordinary course of business after the Petition Date will be paid in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities relating thereto. The Debtor believes the values of these administrative expense claims in this class are approximately $270,000.00.

### 2.2. Priority Tax Claims.

Subject to the provisions of ARTICLE XI of this Plan, each Holder of a Priority Tax Claim, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Priority Tax Claim, shall be treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, except to the extent a Holder of such claim and the Debtor or the Reorganized Debtor agree to less favorable treatment; provided that any Allowed Priority Tax Claim that arises in the ordinary course of the Debtor's business and which is not due and payable on or before **this** Plan Effective Date shall be paid in the ordinary course of business, consistent with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities relating thereto.

(a)     Claims of Comal County for Ad Valorem Taxes. Comal County asserts that it is the Holder of pre-petition Claims for unpaid 2018 ad valorem real property taxes. The Reorganized Debtor shall pay all amounts owed to the Comal County in the ordinary course of business no later than January 31, 2019. In the event the claims are paid after January 31, 2019, regardless of whether the claims are disputed or undisputed, Comal County shall receive interest from the Petition Date through the Effective Date of this Plan and from the Effective Date through payment in full at the state statutory rate pursuant to sections 506(b), 511, and 1129 of the Bankruptcy Code. Comal County shall retain the liens that secure all amounts ultimately

owed on their claims as well as the state law priority of those liens until the claims are paid in full.

Comal County is the Holder of an Administrative Expense Claim for year 2019 ad valorem real property taxes; **provided, however**, that notwithstanding any other deadlines in the Confirmation Order for the payment of other Administrative Expense Claims, Comal County shall receive payment of such taxes in the ordinary course of business prior to the state law delinquency date without being required to file and serve an administrative expense claim and request for payment as a condition of allowance as provided in section 503(b)(1)(D) of the Bankruptcy Code. Comal County shall retain its lien that secures all amounts ultimately owed for year 2019 along with the state law priority of those liens. Comal County's Administrative Expense Claim, if any, for year 2019 ad valorem real property taxes shall not be discharged until such time as the amount owed is paid in full. In the event of a default in the payment of the Tax Claim as provided herein, Comal County shall provide notice to counsel for the Reorganized Debtor who shall have twenty (20) days from the date of the notice to cure the default. If the default is not cured, the Comal County shall be entitled to pursue collection of all amounts owed pursuant to state law outside the Bankruptcy Court. Failure to pay the 2019 ad valorem taxes prior to the state law delinquency date shall constitute an event of default only as to Comal County. The Reorganized Debtor's rights and defenses under Texas state law and the Bankruptcy Code with respect to the foregoing are fully preserved.

### 2.3. Priority Non-Tax Claims.

Subject to the provisions of ARTICLE XI of this Plan, on, or as soon as reasonably practicable thereafter, the later of (i) the Effective Date, and (ii) the date such Priority Non-Tax Claim becomes payable pursuant to any agreement between the Holder of such Priority Non-Tax Claim Claim and the Reorganized Debtor, the Holder of each Allowed Priority Non-Tax Claim, shall receive in full and final satisfaction from the Reorganized Debtor, release, settlement and discharge of such Allowed Administrative Expense Claim: (A) Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim; or (B) in accordance with the terms of any written agreement with the Reorganized Debtor regarding such Allowed Priority Non-Tax Claim; **provided, however**, that each Allowed Priority Non-Tax Claim with respect to liabilities incurred by the Debtor in the ordinary course of business after the Petition Date will be paid in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents establishing, such liabilities relating thereto.

### 2.4. Secured Tax Claims.

On, or as soon as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which each such Secured Tax Claim becomes Allowed, each Holder of an Allowed Secured Tax Claim, as applicable, shall receive in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Secured Tax Claim, as applicable, Cash, equal to the due and unpaid portion of such Allowed Priority Tax Claim or Allowed Secured Tax Claim, or such lesser amount as may be agreed upon by the Holder of such Claim.

Nothing in this Plan shall modify or affect the Lien rights of a Taxing Authority under applicable non-bankruptcy law. Whatever rights any Taxing Authority holds in any collateral or proceeds thereof shall remain in effect and shall not be altered by this Plan or the Confirmation Order until such Allowed Secured Tax Claim is paid in full, at which time any and all corresponding Liens and encumbrances shall be fully discharged.

**2.5.    U.S. Trustee Fees.**

On and after the Effective Date, the Reorganized Debtor will pay all U.S. Trustee Fees in full as they become due and owing until the Bankruptcy Case is closed. Any U.S. Trustee Fees due as of the Confirmation Date shall be paid in full on the Effective Date.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Interests in the Debtor. All Claims, except Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims, are placed in the Classes as set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims Priority Tax Claims, and Priority Non-Tax Claims (example: employee claims), of the kinds specified in sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in ARTICLE II above.

A Claim is placed in a particular Class only to the extent the Claim falls within the description of that Class and classified in other Classes to the extent that any portion of the Claim falls within the description of such other Classes. A Claim is also placed in a particular Class only for the purpose of voting on, and receiving a Distribution pursuant to, this Plan to the extent such Claim is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

**3.1.    Classification of Claims Against and Interest in the Debtor.**

| CLASS | CLAIMS AND INTERESTS | STATUS | VOTING RIGHTS |
|-------|---------------------|--------|---------------|
| 1 | Bond Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

| CLASS | CLAIMS AND INTERESTS | STATUS | VOTING RIGHTS |
|---|---|---|---|
| 4 | Entrance Fee Refund Obligation Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

# ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THIS PLAN

**4.1.** **Impaired Classes of Claims and Interests.**

Class 1 is Impaired and entitled to vote. Classes 2-4 are Unimpaired and not entitled to vote.

# ARTICLE V
## PROVISIONS FOR TREATMENT OF CLAIMS

**5.1.** **Class 1 – Bond Claims.**

(a) *Classification:* Class 1 consists of the Bond Claims

(b) *Treatment:* On the Effective Date, the Claims on the Bonds (and any Liens securing payment and performance of such Claims) shall be affirmed, assumed and deemed Allowed by the Debtor and the Reorganized Debtor, **provided, however**, that such Bond Claims shall be subject to the terms and conditions of the Forbearance Agreement, which will be included as an Exhibit to this Plan. The result of such treatment hereunder is that the Bond Claims, any related Liens and the Bond Documents shall pass through the Chapter 11 Case with the same legal, equitable and contractual rights in existence prior to the Petition Date.

(c) *Voting:* Class 1 is Impaired. Holders of Claims in Class 1 as of the Voting Record Date are entitled to vote to accept or reject this Plan.

**5.2.** **Class 2 – Other Secured Claims.**

(a) *Classification:* Class 2 consists of Debtor's Secured Claims not included in Class 1. The Debtor believes the values of these secured claims in this class are approximately $0.00.

(b) *Treatment:* Unless otherwise agreed by the Holder of any Claim in this Class, each Allowed Other Secured Claim that has not been satisfied as of the Effective Date, will receive (a) deferred Cash payments from the Reorganized Debtor of a value, as of the Effective Date, equal to the Holder's Allowed Other Secured

Claim, (b) payment in Cash from the Reorganized Debtor in full on the later of: (i) the third (3rd) Business Day after the Effective Date or as soon as reasonably practicable thereafter, and (ii) the date on which there is a Final Order allowing such Claim; or (c) reinstatement and otherwise left unaltered the legal, equitable and contractual rights to which the Holder of such Claim is entitled in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting:* Class 2 is Unimpaired. Holders of Claims in Class 2 are deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**5.3.     Class 3 – General Unsecured Claims.**

(a)     *Classification:* Class 3 consists of Debtor's General Unsecured Claims not previously paid during the Bankruptcy Case pursuant to the Critical Vendor Order or other order entered during the pendency of the Bankruptcy Case. Class 3 does not include any Claim of a Resident pursuant to a Resident Agreement, but does include any Claim of a Resident against the Debtor on any other grounds. The Debtor believes the values of these unsecured claims in this class are approximately $368,000.

(b)     *Treatment:* The Debtor proposes that the Debtor or Reorganized Debtor will make payment in Cash in the full amount to each Holder of an Allowed General Unsecured Claim on or before the Distribution Date. The Debtor reserves its rights, however, to dispute the validity of any General Unsecured Claim through the Claims Objection Deadline.

(c)     *Voting:* Class 3 is Unimpaired. Holders of Claims in Class 3 are deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**5.4.     Class 4 – Entrance Fee Refund Obligation Claims.**

(a)     *Classification:* Class 4 consists of any rights of the Residents to refunds of any Entrance Fees as set forth in their respective Resident Agreements as of the Petition Date.

(b)     *Treatment:* As set forth in ARTICLE IX of this Plan, on the Effective Date, the Debtor will assume the Resident Agreements, including any rights of the Residents to refunds of Entrance Fees paid to enter the Pinnacle and the Cottages as set forth in their respective Resident Agreement. Each Resident's rights under its respective Resident Agreement will return to the status in place immediately prior to the Petition Date.

(c)     *Voting:* Class 4 is Unimpaired. Holders of Claims in Class 4 are deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

# ARTICLE VI
## ACCEPTANCE OR REJECTION OF PLAN

### 6.1.    Classes Entitled to Vote.

Subject to Section 6.3 of this Plan, Holders of Claims in the Impaired Class of Claims are entitled to vote as a Class to accept or reject this Plan.

### 6.2.    Acceptance by Impaired Classes.

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under this Plan, shall be entitled to vote to accept or reject this Plan.  An Impaired Class of Claims shall have accepted this Plan if: (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan, and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

### 6.3.    Classes Deemed to Reject Plan.

Claims in Impaired Classes that do not entitle the Holders thereof to receive or retain any property under this Plan are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  This Plan does not include any Class of Claims deemed to have rejected this Plan.

### 6.4.    Summary of Classes Voting on this Plan.

The votes of Holders of Claims in Class 1 will be solicited with respect to this Plan.

### 6.5.    Summary of Classes Presumed to Accept this Plan.

Classes 2, 3, and 4 are unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

### 6.6.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.

If any Class of Claims entitled to vote on this Plan does not vote to accept this Plan, the Debtor may: (a) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code; or (b) amend or modify this Plan in accordance with Section 12.4 of this Plan.  With respect to any Class of Claims that is deemed to reject this Plan, the Debtor shall request that the Bankruptcy Court confirm or "cram down" this Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1.    Transfer of Assets to the Reorganized Debtor.**

The Reorganized Debtor shall continue to exist as of and after the Effective Date as a legal entity in accordance with the applicable laws of the State of Texas and pursuant to its certificate of incorporation and bylaws, as such documents may be amended.   Except as otherwise set forth in this Plan, in the Plan Supplement or in the Confirmation Order, all Assets (including all Causes of Action) shall vest in the Reorganized Debtor, and this Plan shall be treated as a motion to vest all Assets to the Reorganized Debtor free and clear of all Claims, Liens, encumbrances and other Interests, but subject to the obligations as provided in this Plan, including, without limitation, the Claims and Liens under the Bond Documents in favor of the Bond Trustee.   On the Effective Date, the Assets shall be deemed vested in the Reorganized Debtor, and the Reorganized Debtor shall retain liability for all Allowed Claims, but only to the extent provided by this Plan.   All Distributions pursuant to this Plan shall be made by the Debtor or Reorganized Debtor, as applicable, pursuant to this Plan and the Confirmation Order.

**7.2.    Construction and Sale Process.**

(a)      Prior to the completion of the Confirmation Hearing, the Debtor shall have retained the Owner Representative to oversee the construction at its Facilities.   The Owner Representative shall provide progress reports to the Reorganized Debtor, as applicable, the Bond Trustee, its counsel, and any other designated party on a periodic basis to be determined by the Reorganized Debtor, the Bond Trustee and the Owner Representative.

(b)      The Reorganized Debtor shall continue to retain its Real Estate Broker, and assist the Real Estate Broker with the marketing of the Reorganized Debtor.

(c)      The Reorganized Debtor shall have made payments to the Bond Trustee and perform its other obligations as set forth in the Forbearance Agreement.

(d)      Those specific Settlement Proceeds designated for use or potential use in construction and repairs at the Facilities, previously distributed to the Debtor and the Bond Trustee, which have not been applied to construction, payments, or otherwise, remain subject to this Court's jurisdiction.   In the event there is any disagreement between the Reorganized Debtor, and the Bond Trustee over the said use of these funds, the aggrieved party may give written notice protesting the proposed use of those funds, and this Court shall retain jurisdiction to determine said use.

**7.3.    Releases.**

(a)      Releases by the Debtor.   Pursuant to section 1123(b) of the Bankruptcy Code and except as otherwise specifically provided in this Plan or the Plan Supplement, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by this Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor, the Reorganized Debtor, and the Estate from any and all claims, obligations,

rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor, the Reorganized Debtor, the Estate or its affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Bankruptcy Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor, the Reorganized Debtor, or the Issuer, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests before or during the Bankruptcy Case, the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements, instruments or other documents (collectively, the "Debtor Released Claims"), other than Debtor Released Claims against a Released Party arising out of or relating to any act or omission of that party constituting willful misconduct or gross negligence. Notwithstanding the foregoing, these Releases are for conduct by a Released Party that occurred prior to the Effective Date and said Releases are not for any future conduct.

(b)     Limited Releases by Holders of Claims. As of the Effective Date and except as set forth in this Plan or the Plan Supplement (including but not limited to all obligations of the Debtor and the Reorganized Debtor under this Plan which shall not be deemed released), each Holder of a Claim or Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtor, the Reorganized Debtor, and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that such Person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the preparation, negotiation, Court approval or confirmation of this Plan, the Disclosure Statement, any Plan Supplement or related agreements document or instrument, or the filing of any motion or document (or the failure to take action) in the Bankruptcy Case (collectively, "Released Claims"), **provided, however**, the Released Claims shall not include any Claim which arises out of, or relates to any act or omission of that party constituting willful misconduct or gross negligence; or any Claim that arises from facts and circumstances other than those which are specifically enumerated above in this section of this Plan. Further, nothing in this Plan or the Disclosure Statement, or any Plan Supplement or any other document filed in connection with such documents, shall release or be deemed to release the Debtor, the Reorganized Debtor, and the Released Parties from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code; (ii) the environmental laws of the United States or any domestic state, city, or municipality; (iii) any criminal laws of the United States or any domestic state, city, or municipality; (iv)(a) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), (b) the Securities Act of 1933 (as now in effect or hereafter amended), or (c) other securities laws of the United States or any domestic state, city or municipality; (v) the Employee Retirement Income Security Act of 1974, as amended; (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security; (vii) any federal law, rule or regulation including, but not limited to, those related to the

Center for Medicare Services or the Department of Health and Human Services with respect to Medicare reimbursement or recoupment of amounts paid by the Center for Medicare Services which may be subject to a recoupment claim of such agencies or entities made either before or after the Effective Date, or (viii) the claims of the Charitable Trust Division of the Texas Attorney General's Office. Notwithstanding the foregoing, these Releases are for conduct by a Released Party that occurred prior to the Effective Date and said Releases are not for any future conduct.

(c)     No Release of the Obligations under the Bond Documents. Notwithstanding anything to the contrary in this ARTICLE VII, this Plan, the Disclosure Statement, any Plan Supplement or related agreements document or instrument, the Debtor and the Reorganized Debtor shall not be released from the Claims and Liens under the Bond Documents in favor of the Bond Trustee.

## 7.4.   **Administrative Acts.**

(a)     Abandonment of Assets. The Reorganized Debtor may abandon any of the Assets if, in the Reorganized Debtor's good faith business judgment, such abandonment is in the best interest of the Reorganized Debtor's business following the Effective Date; **provided, however**, that the Reorganized Debtor may abandon an Asset that constitutes collateral under the Bond Documents only upon the written consent of the Bond Trustee in its discretion. The Bond Trustee shall not unreasonably withhold its consent.

(b)     Final Decree. The Reorganized Debtor shall be responsible for the implementation of this Plan in all respects. The Reorganized Debtor shall file a motion for entry of final decree pursuant to Bankruptcy Rule 3022 promptly upon administration in full of the Claims and Assets as set forth in this Plan.

## 7.5.   **Reserved Causes of Action.**

Subject to the provisions of this Plan, the Reorganized Debtor shall retain possession of the Assets, including the Causes of Action described and reserved in this Section 7.5 (collectively, the "Reserved Causes of Action"), upon the Effective Date and thereafter will use, conserve, protect, settle, collect, resolve, release, abandon or otherwise liquidate all such Assets as the Reorganized Debtor deems to be in the best interests of its going concern. On and after the Effective Date, the Reorganized Debtor shall manage and control its own affairs, including without limitation, having all authority to consummate sales of its Assets and prosecute, compromise, settle or collect all Estate Causes of Action in the exercise of good faith business judgment as deemed appropriate to carry out the purposes of this Plan and to further the Reorganized Debtor's best interests; **provided, however**, that any sale of Assets that constitute collateral under the Bond Documents shall be consummated only upon the written consent of the Bond Trustee in its discretion. The Bond Trustee shall not unreasonably withhold its consent.

**The descriptions of Potential Causes of Action Below are not intended to be a demand on any of the Potential Defendants in such Causes of Action, and are not an indication of whether a meritorious cause of action exists.**

The descriptions are also not intended to limit claims or causes of action which may be asserted against any potential defendant.

Nevertheless, by the descriptions below, the Debtor expressly, specifically and unequivocally reserves all rights in all Causes of Action, including the Reserved Causes of action described below. Any potential defendant who is also a Creditor in this Case should assume that a Cause of Action may be Pursued by the Debtor or the Reorganized Debtor, as applicable, and act accordingly. Under no circumstances should any potential defendant listed below, or any court with competent jurisdiction to adjudicate the Causes of Action described below, rely on the following statements as a full and complete description of any and all causes of action or for any other purpose.

(a)     Other Reserved Causes of Action.    The Debtor reserves all Causes of Action against its customers and trade vendors for open Accounts Receivable and rights under the various customer contracts between the Debtor and its respective customers and trade vendors. All such claims, Causes of Action and Estate Defenses are expressly reserved under this Plan and will be retained by the Reorganized Debtor. To the extent any facts exist, known or unknown, that would create claims against any of the Debtor's current or former employees or contract counterparties, such Causes of Action are also reserved. The Debtor also retains Causes of Action and Estate Defenses with respect to its trade vendors.

**7.6.     Preservation of Rights of Action; Settlement.**

(a)     The Reorganized Debtor shall constitute and act as the representative of the Estate pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to all Causes of Action, including the Reserved Causes of Action, and Estate Defenses. Subject to the terms of this Plan and the orders of the Bankruptcy Court, all Causes of Action, including the Reserved Causes of Action, and Estate Defenses shall be deemed transferred to and vested in the Reorganized Debtor as of the Effective Date. Thereafter, the Reorganized Debtor shall be vested with authority to assert, prosecute and otherwise resolve all Causes of Action and Estate Defenses.

(b)     At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtor may settle some or all of the Causes of Action or the Disputed Claims subject to obtaining Bankruptcy Court approval. The proceeds from the settlement of any Causes of Action shall be held in trust to be transferred to the Reorganized Debtor on the Effective Date.

**7.7.     Claim Objections.**

From and after the Effective Date, the Reorganized Debtor shall have the sole power and authority to object to any Claim, other than the Class 1 Claim. Without limiting the generality of the foregoing, the Reorganized Debtor shall have the power to: (a) file Claim Objections on any legal or equitable basis; (b) seek to subordinate or recharacterize any Claim on any legal or equitable basis; (c) assert any right of setoff or recoupment, including without limitation, any such right pursuant to section 553 of the Bankruptcy Code; (d) assert any and all Estate Defenses, whether legal or equitable, including any affirmative defenses or setoff right; (e)

assert any counterclaim against any Claim, whether arising out of the same or different transactions; and (f) object to any Claims on the basis of section 502(d) of the Bankruptcy Code. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Reorganized Debtor reserves all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

**7.8.    Retention of Subsequent Causes of Action.**

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan or the Confirmation Order shall preclude or estop the Reorganized Debtor or its privies, as successors in interest to the Debtor and its privies, from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any or all of its or their rights in connection with the Causes of Action, irrespective of the identity of any interest, cause of action, or nexus of fact, issues or events which is now or which could have been asserted in this Case, the present litigation, and those which may be asserted in any subsequent litigation brought by the Reorganized Debtor or its privies.  Moreover, the failure to commence any Causes of Action prior to the Confirmation Date shall not constitute res judicata, judicial or collateral estoppel as to such Causes of Action.

**7.9.    Corporate Existence.**

Except as otherwise provided herein or in the Plan Supplement, the Reorganized Debtor shall continue to exist on and after the Effective Date as a separate non-profit corporation that is exempt from federal income tax as a charitable organization as described under section 501(c)(3) of the Internal Revenue Code of 1986, as amended and will have all the powers of a non-profit corporation, pursuant to the applicable law in the jurisdiction in which Reorganized Debtor was incorporated or formed.

**7.10.    Reorganized Debtor Governance.**

The existing members of the Debtor's Board of Directors shall continue to be members of the Reorganized Debtor's Board of Directors, subject to normal turnover.

**7.11.    Officers of Reorganized Debtor.**

The existing officers of the Debtor shall continue to be officers of the Reorganized Debtor, subject to normal turnover.  Such officers shall serve in accordance with applicable non-bankruptcy law.

**7.12.    Corporate Action.**

Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects, including all actions contemplated by this Plan (whether to occur before, on or after the Effective Date).  All matters provided for in this Plan involving the corporate structure of the Debtor or the Reorganized Debtor, as applicable, and any corporate action required by the Debtor or the Reorganized Debtor in connection with this Plan shall be

deemed to have occurred and shall be in effect, without any requirement of further action by the directors or officers of the Debtor or the Reorganized Debtor.

On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Debtor or the Reorganized Debtor, as the case may be, and any and all other agreements, documents, securities and instruments relating to the foregoing.

### 7.13. Adversary Proceedings

As of the filing of this Plan, two of the three Adversary Proceedings initiated during the Bankruptcy Case have been resolved. The third proceeding remains open as of the filing of this Plan, and is discussed in more detail below.

In *Texas Health and Human Services Commission vs. UMB Bank, N.A. and Eden Home, Inc.* (Case No. 18-5230), the Bankruptcy Court approved parties' stipulation, and the Texas Health and Human Services Commission ("THHSC") filed a notice dismissing its complaint. THHSC dismissed the first count, seeking a determination that UMB Bank does not have a lien on the Debtor's commercial tort claims, without prejudice except as to commercial tort claims dealt with in the Debtor's *Joint Motion to Approve Proposed Compromise*.[1] THHSC dismissed the second count, asking the Bankruptcy Court to apportion Settlement Proceeds between contract claims and commercial tort claims, with prejudice. The Court closed this adversary on September 28, 2018.

The movant dismissed *Texas Department of Insurance vs. Eden Home, Inc.* (Case No. 18-5236), its complaint for declaratory relief as moot and without prejudice upon the Debtor's adoption of procedures to assume the Residents' Resident Agreements. As set forth herein, the Reorganized Debtor will assume these Resident Agreements on this Plan's Effective Date. The Court closed this adversary on November 2, 2018.

*The Texas Attorney General on behalf of the public interest in charity vs. UMB Bank, N.A.* (Case No. 18-5243) remains open as of filing this Plan. The Texas Attorney General's complaint requests a determination that the Bond Trustee does not have a lien on any donor-restricted funds held by the Debtor. The Texas Attorney General, the Reorganized Debtor, and UMB Bank, N.A., as the Bond Trustee, agree that the Bankruptcy Court has made no determination on this issue and the Reorganized Debtor will continue to distinguish those certain donated funds as donor-restricted in its books and records, as it did prior to the Petition Date. These parties conclude that this issue will return to the same position in place prior to the Petition Date and they will jointly request the Bankruptcy Court dismiss this adversary proceeding without prejudice prior to the Effective Date.

---

[1] Docket No. 270.

**7.14. Post-Effective Date Residents' Committee. [Debtor's Last Proposed Version]**

        (a)     A On the Effective Date, the Residents' Committee will become the Post-Effective Date Residents' Committee.

        (b)     The Post-Effective Date Residents' Committee shall consist of its current members as of the Effective Date.

        (c)     The Post-Effective Date Residents' Committee shall:

            (i)     Have the right to consult with the Reorganized Debtor concerning the use of Settlement Proceeds for effecting the repairs and improvements the Reorganized Debtor anticipates making to the Facility;

            (ii)     Retain all rights provided within the Order Granting Joint Motion to Approve Compromise [Under Rule 9019] [Dkt. No. 295] to approve use of the $4.25 Million in Settlement Proceeds, and to seek relief before the Bankruptcy Court in the event that use of those Settlement Proceeds is contrary to the plan approved by the Owner's Representative;

            (iii)     Receive from the Reorganized Debtor written materials as specified: (a) any correspondence from the Bond Trustee to the Reorganized Debtor giving a notice of the Reorganized Debtor's default; (b) monthly operations budgets of the Reorganized Debtor; and (c) monthly construction budgets of the Reorganized Debtor; and

            (iv)     Receive from the Reorganized Debtor a monthly report indicating (a) the number of parties that accessed the virtual data room, maintained by the Real Estate Broker, during the prior month; (b) the number of parties that have approached the Reorganized Debtor and/or their Real Estate Broker with an offer during the prior month to which the Board of Directors has authorized a counter offer.

        (d)     The Board of Directors of the Reorganized Debtor shall pass a resolution affirming the Board of Directors shall not consider a sale or affiliation offer from any entity or entities that will reject the Resident Agreements.

        (e)     The Post-Effective Date Residents' Committee shall have the authority to select and employ counsel and other professionals of its choice to assist it in its consultations with the Reorganized Debtor, and the right to obtain payment of or for professional fees and expenses from the Reorganized Debtor; provided, however, that such payment amount shall be limited in the aggregate for all such professionals to $1,500 per month.

(f)     In the event the real estate owned by EdenHill is posted for foreclosure, or the personalty owned by EdenHill is the subject of sale under Article 9 of the Texas Business and Commerce Code, or is the subject of a sale to a third party which is not assuming the Resident Agreements, and the Post-Effective Date Residents' Committee, after communicating with the Board of EdenHill through counsel, determines in its discretion that it needs protection of its interests, it can seek injunctive relief in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division.

**7.15.    Post-Effective Date Residents' Committee.    [Residents' Committee's Last Proposed Version]**

(a)     On the Effective Date, the Residents' Committee will become the Post-Effective Date Residents' Committee.

(b)     The Post-Effective Date Residents' Committee shall consist of its current members as of the Effective Date.

(c)     The Post-Effective Date Residents' Committee shall:

(i)     Have the right to consult with the Reorganized Debtor concerning the use of Settlement Proceeds for effecting the repairs and improvements the Reorganized Debtor anticipates making to the Facility;

(ii)     Retain all rights provided within the *Order Granting Joint Motion to Approve Compromise [Under Rule 9019]* [Dkt. No. 295] to approve use of the $4.25 Million in Settlement Proceeds, and to seek relief before the Bankruptcy Court in the event that use of those Settlement Proceeds is contrary to the plan approved by the Owner's Representative;

(iii)     Receive from the Reorganized Debtor written materials as specified: (a) any correspondence from the Bond Trustee to the Reorganized Debtor giving a notice of the Reorganized Debtor's default; (b) monthly operations budgets of the Reorganized Debtor; and (c) monthly construction budgets of the Reorganized Debtor;

(iv)     Receive from the Reorganized Debtor a monthly report indicating (a) the number of parties that accessed the virtual data room, maintained by the Real Estate Broker, during the prior month; (b) the number of parties that have approached the Reorganized Debtor and/or their Real Estate Broker with an offer during the prior month to which the Board of Directors has authorized a counter offer; and

(v)     Have the right to appear and be heard on any matters within its reasonable discretion, which relate to the EdenHill Residents of the Post-Effective Date Residents' Committee.

(d)     The Board of Directors of the Reorganized Debtor shall pass a resolution affirming the Board of Directors shall not consider a sale or affiliation offer from any entity or entities that will reject the Resident Agreements.

(e)     The Post-Effective Date Residents' Committee shall have the authority to select and employ counsel and other professionals of its choice to assist it in its consultations with the Reorganized Debtor, and the right to obtain payment of or for professional fees and expenses from the Reorganized Debtor; **provided, however**, that such payment amount shall be limited in the aggregate for all such professionals to $1,500 per month, except that in the event of a contested hearing or court appearance on behalf of the Post-Effective Date Residents' Committee, counsel is entitled to payment of all reasonable fees and expense from the Reorganized Debtor, in the event of disagreement regarding the amount of reasonable fees and expenses, the Post-Effective Date Residents' Committee may request that the Bankruptcy Court determine the amount of the reasonable fees and expenses to be paid by the Reorganized Debtor.

(f)     In the event the real estate owned by EdenHill is posted for foreclosure, or the personalty owned by EdenHill is the subject of sale under Article 9 of the Texas Business and Commerce Code, or if the EdenHill Facility is the subject of a sale to a third party, and the third party has not provided indications of intent to assume the Resident Agreements, and the Post-Effective Date Residents' Committee, after communicating with the Board of EdenHill through counsel, determines in its discretion that it needs protection of its interests, the Post-Effective Date Residents' Committee can seek relief in the U.S. Bankruptcy Court for the Western District of Texas, San Antonio Division.[

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTION

### 8.1.    Source of Distributions.

Distributions to any Creditor under this Plan shall be made by the Reorganized Debtor from its Estate Funds and funds from operations.

### 8.2.    Means of Cash Payment.

Except as otherwise agreed by the Reorganized Debtor, Distributions under this Plan shall be made in Cash by check, wire or ACH transfer in U.S. funds or by other means agreed to by the payor and payee or, absent agreement, such commercially reasonable manner as the payor determines in its sole discretion.

### 8.3.    Delivery of Distributions.

Deliveries of Distributions to the Holders of Allowed Claims shall be made at the address set forth on the respective proofs of claim filed in the Case or as may be agreed upon between the Reorganized Debtor and such Claimant.  If no proof of claim is filed, Distributions on account of Allowed Claims shall be made to the Claimant at the address reflected in the Schedules or as agreed upon between the Reorganized Debtor and such Claimant.  If any Distribution is returned as undeliverable, no further payment shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified in writing of such Claimant's

proper current address, at which time all missed payments shall be made to such Claimant. All claims for undeliverable payments shall be made on or before the first anniversary of the attempted payment. After such date, all undelivered Distributions shall be deemed as Unclaimed Property and may revert to the Reorganized Debtor's funds for operations, and the Claim of any Holder with respect to such property shall be discharged and forever barred.

### 8.4. Time Bar to Cash Payments.

Distributions issued by check shall be null and void if not cashed within one hundred twenty (120) days of the date of issuance thereof. Requests for reissuance of any check shall be made in writing directly to the Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before ninety (90) days after the date of issuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

### 8.5. Claims Payable by Third Parties.

Except as expressly provided for in this Plan or as the Reorganized Debtor may decide in exercising its business judgment and good faith, no Distribution under this Plan shall be made on account of any Claim that is payable pursuant to any agreement or applicable law making a Person other than the Debtor obligated for such payment, including without limitation any lease, sub-lease, license agreement, promissory note, indemnity, guaranty, understanding or insurance policies until the Holder of such Claim has exhausted all remedies with respect to such co-obligor, co-lessor, indemnitor or insurance provider. To the extent that one or more of the applicable non-debtor payors agrees to satisfy a Claim, whether in full or in part, then immediately upon such payor's written agreement, such Claim may be expunged without a Claim Objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing or any other provision of this Plan, this Section 8.5 shall not be applicable to Tax Claims.

### 8.6. Applicability of Insurance Policies.

Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any cause of action that the Debtor or the Reorganized Debtor or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses.

### 8.7. Withholding and Reporting Requirements.

The Reorganized Debtor shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made under this Plan shall be subject to any such withholding and reporting requirements. The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**8.8.** **Single Satisfaction Claims.**

Holders of Allowed Claims may assert such Claims against the Debtor, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtor based upon the full Allowed amount of the Claim. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under this Plan on account of an Allowed Claim exceed 100% of the underlying Allowed Claim.

# ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND OTHER AGREEMENTS

**9.1.** **Assumption/Rejection.**

On the Effective Date, and to the extent permitted by applicable law, every Executory Contract and Unexpired Lease is assumed unless such Executory Contract or Unexpired Lease: (a) has been assumed pursuant an order of the Bankruptcy Court; (b) is identified in this Plan, any Plan Supplement or the Confirmation Order to be rejected; or (c) is the subject of a pending motion to assume or reject filed on or before the Confirmation Hearing.

No less than ten (10) days before the Voting Deadline, the Debtor will file and serve one or more Plan Supplements designating the Unexpired Leases and Executory Contracts to be assumed by the Debtor and assigned to the Reorganized Debtor under this Plan and the proposed Cure Claim for each lease or contract to be assumed under this Plan and the proposed Cure Claim for each lease or contract to be assumed under this Plan. It is the Debtor's intent to assume all Executory Contracts and Unexpired Leases and assign them to the Reorganized Debtor unless a particular contract or lease is expressly rejected by the Debtor. Any Allowed Cure Claims will be paid in Cash in full on the Effective Date of this Plan, or as soon as reasonably possible. This Plan shall be treated as a motion to approve such Unexpired Leases and Executory Contracts, and to assign them to the Reorganized Debtor.

**Notwithstanding anything contained in this Plan to the contrary, each Resident Agreement, and all obligations arising thereunder, including any rights of each resident to a refund of any Entrance Fee it paid as set forth in its Respective Resident Agreement, will be assumed by the Debtor and assigned to the Reorganized Debtor, as of the Effective Date, pursuant to this Plan.**

**9.2.** **Pass-Through.**

Except as otherwise provided in this Plan, any rights or arrangements necessary or useful to the operation of the Reorganized Debtor's rights and duties under this Plan, but not otherwise addressed as a Claim or Interest, including non-exclusive or exclusive patent, trademark, copyright, maskwork or other intellectual property licenses and other executory and/or non-executory contracts not assumable under section 365(c) of the Bankruptcy Code, shall, in the absence of any other treatment under this Plan or Confirmation Order, be passed through the Chapter 11 Case for the benefit of the Reorganized Debtor and the counterparty unaltered and unaffected by the bankruptcy filing or Chapter 11 Case.

**9.3.    Bar to Rejection Claims.**

Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract or an Unexpired Lease shall be forever barred and shall not be enforceable against the Estate or the Reorganized Debtor, unless a proof of claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor no later than thirty (30) days after the Confirmation Date.

**9.4.    Rejection Claims.**

Any Rejection Claim which is timely filed and Allowed shall be classified and treated as a Class 3 General Unsecured Claim subject to the provisions of section 502(g) of the Bankruptcy Code; **provided, however**, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date or upon the entry of the Confirmation Order, shall be limited in accordance with sections 502(b)(6) and 365(b)(1)(A) and (B) of the Bankruptcy Code and obligations under applicable law to mitigate such damages. Nothing contained herein shall be deemed an admission by the Reorganized Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Reorganized Debtor of any Objections to any such Claim if asserted.

**9.5.    Reservation of Rights.**

Neither the exclusion nor inclusion of any contract or lease in this Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an executory contract or unexpired lease or that the Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or Reorganized Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

**9.6.    Contracts and Leases Entered Into After the Petition Date.**

Notwithstanding any other provision in this Plan, contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or the Reorganized Debtor, as applicable, liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE X**
**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT**
**AND UNLIQUIDATED CLAIMS**

**10.1.    Objections to Claims.**

(a)    Unless otherwise allowed by the Court, all Claims must be filed by the Claims Bar Date.

(b)     From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to file, settle, compromise, withdraw, or litigate to Final Order any Objections to any Claim or seek to subordinate any Claim.

(c)     As soon as practicable, but no later than the Claims Objection Deadline, the Debtor or the Reorganized Debtor, as applicable, may file any Objection with the Bankruptcy Court and serve such Objections on the Creditors holding the Claims to which Objections are made.  Nothing contained herein shall limit the right of the Debtor or the Reorganized Debtor to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtor or the Reorganized Debtor with adequate notice and a hearing.

(d)     Any proof of claim filed after the Claims Objection Deadline shall be of no force and effect and need not be objected to by the Debtor or the Reorganized Debtor.

## 10.2.   <u>Distributions on Account of Disputed Claims.</u>

(a)     No Distribution shall be made on account of a Disputed Claim until such Claim is Allowed.  Until a Disputed Claim becomes Allowed by a Final Order, such Claim shall be treated as a Disputed Claim for purposes of estimates, allocations, and Distributions under this Plan.  Any Claim based on a contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

(b)     The Debtor and the Reorganized Debtor shall have the sole right at any time and in the Debtor or the Reorganized Debtor's discretion to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any Objection has been made to such Claim or whether the Bankruptcy Court has ruled on any Objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time until there is a Final Order relating to the Objection, including during the pendency of any appeal related to any such Claim or Claim Objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  All of the aforementioned Objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.

## 10.3.   <u>Allowance of Disputed Claims.</u>

This Section 10.3 shall apply to all Disputed Claims.  Nothing contained in this Plan, Disclosure Statement or Confirmation Order shall change, waive or alter any requirement under applicable law that the Holder of a Disputed Claim must file a timely proof of claim, and the Disputed Claim of any such Creditor who is required to file a proof of claim and fails to do so shall be discharged and shall receive no Distribution through this Plan.  The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor

relationship, and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The Holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim. Exclusive venue for any Disputed Proceeding shall be in the Bankruptcy Court. Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court. Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Disputed Proceeding. The Reorganized Debtor shall retain all rights of removal to federal court.

### 10.4.  General Unsecured Claims.

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in this Plan shall preclude the Reorganized Debtor from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

### 10.5.  Allowance of Certain Claims.

All Disputed Claims shall be liquidated and determined as follows:

(a)  Application of Adversary Proceeding Rules. Unless otherwise ordered by the Bankruptcy Court, any Objection to a Disputed Claim shall be treated as a contested matter subject to Bankruptcy Rule 9014 of the Federal Rules of Bankruptcy Procedure. However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection. The Debtor or the Reorganized Debtor, however, may, at its election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

(b)  Scheduling Order. Unless otherwise ordered by the Bankruptcy Court, or if the Objection is pursued as an adversary proceeding, a scheduling order shall be entered as to each Objection to a Claim. The scheduling order may include (i) discovery cut-off, (ii) deadlines to amend pleadings, (iii) deadlines for designation of and objections to experts, (iv) deadlines to exchange exhibit and witness lists and for objections to the same, and (v) such other matters as may be appropriate.

(c)  Mediation. The Court may order the parties to mediate in connection with any Objection to a Claim. The Debtor or the Reorganized Debtor may include a request for mediation in its objection, and request that the Court require mediation as a part of the scheduling order.

### 10.6.  Offsets and Defenses.

The Reorganized Debtor shall be vested with and retain all Estate Defenses against any Claim, including without limitation all rights of setoff or recoupment and all counterclaims against any Claimant. Assertion of any Estate Defenses by the Reorganized Debtor shall constitute a "core" proceeding to the extent allowed under applicable law.

### 10.7. Compliance with Tax Requirements/Allocations.

The Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant hereto shall be subject to applicable withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements. The Reorganized Debtor may allocate all Distributions made under this Plan in compliance with all applicable sales tax, wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

### 10.8. Expunging of Certain Claims.

Any Claim that is Scheduled as being contingent, unliquidated or disputed or in the amount of $0.00, and for which no proof of claim has been timely filed, shall be deemed Disallowed and such Claim may be expunged without the necessity of filing an Objection and without any further notice to, or action, order or approval of the Bankruptcy Court.

## ARTICLE XI
## ALLOWANCE AND PAYMENT OF CERTAIN
## ADMINISTRATIVE EXPENSE CLAIMS

### 11.1. Professional Fee Claims.

(a)     On the Effective Date, the Reorganized Debtor shall pay all amounts owing to Professionals for all outstanding amounts relating to prior periods through the Effective Date approved by the Bankruptcy Court in accordance with the Professional Fee Order; **provided, however**, that Professionals shall continue to prepare fee applications in accordance with the Professional Fee Order (or such other order or orders as may be applicable to a Professional) for services rendered and expenses incurred up to the Effective Date. On the Effective Date and to the extent the Professional does not have sufficient funds in a Retainer, the Debtor or Reorganized Debtor, as applicable, shall pay the Allowed Professional Fee Claims. Either (i) any remaining Retainers held by a particular Professional or (ii) funds from the Reorganized Debtor's operations shall be used by the Reorganized Debtor to pay the remaining Professional Fee Claims owing to the Professionals within ten (10) Business Days of the entry of an Order Allowing the applicable Professional Fee Claim.

(b)     All final requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code for services rendered to or on behalf of the Debtor prior to the Effective Date must be filed and served on the Reorganized Debtor and its counsel no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to Professional Fee Claims or other entities' Claims for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor, its counsel, and the requesting Professional or other entity no later than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was filed and served.

(c)     Any Person holding a Retainer shall remit to the Reorganized Debtor any and all portions of the Retainer which have not been applied pursuant to an Order of the Bankruptcy Court.  Such unused portions of any Retainer shall be transferred to the Reorganized Debtor on or before: (i) sixty (60) days after the Effective Date, if no Fee Claim is filed timely pursuant to Section 11.1(b); or (ii) ten (10) days after the Bankruptcy Court enters an Order with respect to a timely filed Fee Claim, if such Fee Claim is filed timely pursuant to Section 11.1(b).

## 11.2.    <u>Administrative Expense Claims.</u>

The Confirmation Order will establish an deadline for filing of all Administrative Expense Claims (the "<u>Administrative Claims Bar Date</u>"), excluding Professional Fee Claims, which date will be thirty (30) days after the Effective Date.  Holders of asserted Administrative Expense Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. § 1930, Administrative Tax Claims and administrative ordinary course liabilities, shall file with the Bankruptcy Court a request for the allowance and payment of such Administrative Expense Claim on or before the Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Reorganized Debtor will set forth such date and constitute notice of this Administrative Claims Bar Date.  The Debtor or the Reorganized Debtor, as the case may be, shall have no less than twenty-one (21) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Expense Claims before a hearing for determination of allowance of such Administrative Expense Claims.

## 11.3.    <u>Administrative Ordinary Course Liabilities.</u>

Holders of Administrative Expense Claims that are based on liabilities incurred in the ordinary course of the applicable Debtor's business (other than Claims of a Professional Person for Fees or of governmental units for taxes and for interest and/or penalties related to such taxes) shall not be required to file any request for payment of such Claims. Such Administrative Expense Claims, unless objected to by the applicable Debtor or Reorganized Debtor, shall be assumed and paid by Reorganized Debtor, in Cash, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Expense Claim.

## 11.4.    <u>Administrative Tax Claims.</u>

All requests for payment of Administrative Expense Claims by a Taxing Authority (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be filed and served on the Reorganized Debtor and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the filing of the tax return for such taxes for such tax year or period with the applicable Taxing Authority.  Any Holder of any such Claim that is required to file a request for payment of such taxes and does not file and properly serve such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against the Estate, the Debtor, the Reorganized Debtor, or the Assets, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date.  Any

interested party desiring to object to an Administrative Expense Claim for taxes must file and serve its objection on counsel to Reorganized Debtor and the relevant Taxing Authority no later than thirty (30) days after the Taxing Authority files and serves its application.

## ARTICLE XII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### 12.1.  Conditions Precedent to Confirmation and Effectiveness.

This Plan shall not become effective until the following conditions shall have been satisfied or waived, but only with the consent of the Bond Trustee (which the Bond Trustee shall not unreasonably withhold), by the Debtor; **provided, however**, that the Debtor may not waive entry of the Order approving the Disclosure Statement and confirming this Plan:

(a)  The Bankruptcy Court shall have entered an order, which shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtor and the Bond Trustee, approving the Disclosure Statement with respect to this Plan and the solicitation of votes thereon as being in compliance with section 1125 of the Bankruptcy Code and applicable non-bankruptcy law.

(b)  The Confirmation Order shall have been entered in form and substance acceptable to the Debtor and the Bond Trustee, and shall not be subject to any stay or subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code.

(c)  This Plan and the Plan Supplement, including any schedules, documents, supplements and exhibits thereto shall be, in form and substance, reasonably acceptable to the Debtor and the Bond Trustee.

(d)  The Debtor, the Reorganized Debtor, and the Bond Trustee shall have executed and delivered the Forbearance Agreement in form and substance acceptable to the parties thereto.

(e)  All other conditions precedent not otherwise waived by the Debtor and the Bond Trustee have been satisfied to the satisfaction of the Bond Trustee

(f)  Amendments, if any, to the corporate governance documents for the Reorganized Debtor shall have been executed under applicable non-bankruptcy law.

(g)  A notice of the Effective Date shall have been filed by the Debtor or Reorganized Debtor and thereafter served upon all Creditors and parties in interest.

### 12.2.  Revocation of Plan.

This Plan may be revoked or withdrawn at any time before the Effective Date, but only by the Debtor.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, (i) this Plan shall be deemed null and void; and (ii) nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the

case may be, or any other Person or to prejudice in any manner the rights of such Debtor, or Person in any further proceedings involving the Reorganized Debtor.

### 12.3.  Substantial Consummation.

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.4.  Non-Material Modifications.

The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims and Interests, correct any defect, omission, or inconsistency in this Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant to this Section 12.4 insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest Holder who has not accepted in writing the modification.

### 12.5.  Material Modifications.

Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that this Plan, as modified, (a) meets the requirements of sections 1122 and 1123 of the Bankruptcy Code; (b) the Bankruptcy Court, after notice and a hearing, confirms this Plan, as modified, under section 1129 of the Bankruptcy Code; and (c) the circumstances warrant such modification.  A Holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XIII
## EFFECT OF THIS PLAN ON CLAIMS AND INTERESTS

### 13.1.  Compromise and Settlement.

(a)     Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, potential Distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, of this Plan and all other compromises and settlements provided for in this Plan. The Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

(b)     It is not the intent of the Debtor that confirmation of this Plan shall in any manner alter or amend any settlement and compromise between the Debtor and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement").  To the extent of any conflict between the terms of this Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control and such Prior Settlement shall be enforceable according to its terms.  Further, nothing in this Section 13.1 shall constitute a compromise or settlement of a Claim of a Creditor that previously has obtained relief from the automatic stay pursuant to an order of the Bankruptcy Court (each, a "Prior Order") allowing such Creditor to pursue a claim against the Debtor outside of this Bankruptcy Case with limitations that said Creditor shall only pursue proceeds from the Debtor's insurance policies and shall not receive any other Distributions from the Estate or the Reorganized Debtor.

### 13.2.   Satisfaction of Claims.

The rights afforded in this Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever against the Debtor or its Estate, Assets, properties, or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in the Debtor shall be satisfied, discharged, and released in full.  Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against Debtor and its Affiliates, successor or assign, or its Estate, Assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

### 13.3.   [Intentionally Omitted]

### 13.4.   Good Faith.

As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### 13.5.   Injunctions.

(a)     Permanent Injunctions.  Except as otherwise provided in this Plan, from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor prior to the Effective Date are permanently enjoined from taking any of the following actions against the Debtor, its Estate, any Residents' Committee, the Assets or the Reorganized Debtor on account of any such Claims: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien or encumbrance; (iv) asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; **provided, however**, that nothing contained herein shall preclude such Persons, including without limitation the Bond Trustee and the Master Trustee with respect to Claims in Class 1 as

preserved in the Forbearance Agreement, from exercising their rights pursuant to and consistent with the terms of this Plan and the Confirmation Order.

(b) <u>Injunction Related to Releases and Exculpation</u>. The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released or exculpated pursuant to this Plan.

(c) <u>Injunction Against Interference with Plan</u>. Upon entry of the Confirmation Order, all Holders of Claims and Interest and all other parties in interest, along with their respective successors and assigns and present and former affiliates, employees, agents, officers, directors, and principals, shall be enjoined from taking any action interfere with the implementation or occurrence as of the Effective Date and, after the occurrence of the Effective Date, shall be further enjoined from obstruction or interference, directly or indirectly, with the business operations, business relationships, existing contracts, or prospective contractual relationships of the Reorganized Debtor and/or any effort to impede the Reorganized Debtor's ability to meet the Post-Confirmation Business Plan or otherwise perform its obligations under this Plan.

(d) <u>Term of Injunctions or Stays</u>. Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**Protection against Discriminatory Treatment.**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, including governmental units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor or another Person with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Case.

## 13.7. <u>Setoffs.</u>

Except as otherwise expressly provided for in this Plan, applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, the Debtor or the Reorganized Debtor, as applicable, may offset against any Allowed Claim and the payments to be made pursuant to this Plan on account of such Allowed Claim (before such payment is made), any claims, rights, Estate Defenses and Causes of Action of any nature that such Debtor may hold against the Holder of such Allowed Claim, to the extent such claims, rights, Estate Defenses or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise); **provided, however**, that neither the

failure to effect such a setoff nor the Allowance of any Claim or Interest pursuant to this Plan shall constitute a waiver or release by the Reorganized Debtor of any such claims, rights, Estate Defenses and Causes of Action that the Reorganized Debtor may possess against such Claimant.

### 13.8. Recoupment.

In no event shall any Holder of Claims be entitled to recoup any Claim or Interest against any claims, rights, Accounts Receivable, or Causes of Action of the Debtor or the Reorganized Debtor, as applicable, unless: (i) such Holder actually provides notice thereof in writing to the Reorganized Debtor of its intent to perform a recoupment; and (ii) such notice includes the amount to be recouped by the Holder of the Claim or Interest and a specific description of the basis for the recoupment. Notwithstanding the foregoing, nothing in this Plan shall be deemed to deprive or prevent the Debtor or Reorganized Debtor, as applicable, from seeking a judicial determination from the Bankruptcy Court or any other court of competent jurisdiction regarding the validity and extent of such Claimant's recoupment rights.

### 13.9. Satisfaction of Subordination Rights.

No subordination rights or agreements between Claimants shall be binding or enforceable against the Reorganized Debtor in the performance of this Plan. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Claim Holder by reason of any claimed subordination rights or otherwise, so that each Claim Holder shall have and receive the benefit of the Distributions in the manner set forth in this Plan.

### 13.10. Turnover.

On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor, and the Reorganized Debtor may exercise such rights with respect to any property that may be arguably have been Property of the Estate to the fullest extent allowable under applicable law and authority.

### 13.11. Subordination.

On the Effective Date, the right of the Debtor to seek subordination of any Claim or Interest pursuant to section 510 of the Bankruptcy Code shall be fully reserved and vested in the Reorganized Debtor to pursue, if deemed prudent by the Reorganized Debtor, and the treatment afforded any Claim or Interest that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.

### 13.12. Automatic Stay.

The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of this Plan as to the Debtor and all Assets. Upon the Effective Date, the automatic stay shall be replaced by the injunction set forth in Section 13.5, above.

### 13.13. Term of Stay or Injunctions.

Unless otherwise in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case or pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE XIV
## JURISDICTION IN THE BANKRUPTCY AND OTHER COURTS

### 14.1. Retention of Jurisdiction.

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to this Chapter 11 Case and this Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all Objections to or applications concerning the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense Claim or other Claim;

(b)     To hear and determine any and all applications for payments of fees and expenses from the Estate made by attorneys or any other Professional pursuant to sections 330 or 503 of the Bankruptcy Code;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Unexpired Leases and Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)     To hear and determine all controversies, disputes, and suits by and between the Reorganized Debtor and the Bond Trustee or Master Trustee related to the use of the Settlement Proceeds;

(e)     To hear and determine any and all adversary proceedings, applications, and contested matters in this Chapter 11 Case, including any remands or appeals, and grant or deny any application involving the Debtor that may be pending on the Effective Date or that are retained an preserved in this Plan;

(f)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Confirmation Order, this Plan or in connection with the enforcement of any remedies made available under this Plan, the documents that are ancillary to and aid in effectuating this Plan or any agreement, instrument, or other document governing any of the foregoing, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets; (ii) the valuation of all Collateral, including hearing all valuation motions:

(iii) the determination of the validity of any Lien or claimed right of setoff; and (iv) determinations of objections to Disputed Claims;

(g)     To ensure that Distributions to Holders of Allowed Claims are accomplished and effected as provided herein;

(h)     To determine all issues relating to the enforcement, fixing or liquidation of Claims;

(i)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(j)     To enable the Reorganized Debtor to prosecute any and all proceedings which may be brought to set aside Liens or encumbrances and to recover any transfers, assets, properties or damages to which the Reorganized Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including Causes of Action, controversies, disputes and conflicts between the Reorganized Debtor and any other party, including but not limited to, any Objections to Claims, including any Objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part; and Causes of Action; including Preference Actions and other Avoidance Actions or equitable subordination;

(k)     To consider any amendments to or modifications of this Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(l)     To hear and determine all disputes involving the existence, scope, and nature of the exculpations, releases, and injunctions issued and granted under this Plan;

(m)     To provide for and approve any sale after the Effective Date of any of the Assets free and clear of all Liens, Claims and Interests;

(n)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of this Plan and the transactions contemplated pursuant thereto;

(o)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to this Plan;

(p)     To issue injunctions and effect any other action actions that may be necessary or desirable to restrain interference by an entity with the consummation or implementation of this Plan;

(q)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code); and

(r)     To enter a final decree closing this Chapter 11 Case.

## 14.2.  <u>Abstention and Other Courts.</u>

Nothing herein shall affect the right of the Reorganized Debtor to assert Causes of Action or Estate Defenses or otherwise seek any appropriate relief in any court of competent jurisdiction. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 Case, this Section 14.2 of this Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE XV
# MISCELLANEOUS PROVISIONS

## 15.1.  <u>Severability.</u>

Should the Bankruptcy Court determine that any provision of this Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Debtor or the Reorganized Debtor, as applicable, may modify this Plan in accordance with Sections 12.4 and 12.5 hereof so that such provision shall not be applicable to the Holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of this Plan, or (b) require the resolicitation of any acceptance or rejection of this Plan.

## 15.2.  <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements.</u>

The terms of this Plan, Disclosure Statement and Confirmation Order may not be changed, contradicted or varied by any oral statement, agreement, warranty or representation. This Plan may only be modified, amended or supplemented in writing signed by an authorized representative of the Debtor or the Reorganized Debtor, as applicable, and consented to by the Bond Trustee.  The Debtor; the Debtor's CEO; the Debtor's CFO; and the Debtor's other Professionals make no representations, warranties, promises or inducements relating to this Plan or its confirmation except as expressly set forth in this Plan or the Disclosure Statement.

## 15.3.  <u>Waiver.</u>

The Debtor or the Reorganized Debtor, as applicable, shall not be deemed to have waived any right, power or privilege pursuant to this Plan unless the waiver is in writing and signed by an authorized representative of the Debtor or the Reorganized Debtor, as the case may be.  There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Debtor or Reorganized Debtor of any right pursuant to this Plan, including the provisions of this anti-waiver section.  The waiver of any right under this Plan shall not act as a waiver of any other or subsequent right, power or privilege.

### 15.4. Construction.

This Plan shall control over any inconsistent term of the Disclosure Statement or any other Plan Document. The Confirmation Order shall control over any inconsistent provision of this Plan, Disclosure Statement and other Plan Documents.

### 15.5. Notice.

Any notice or communication required or permitted by this Plan shall be in writing given, made or sent as follows:

        (a)     If to a Creditor, notice may be given as follows: (i) if the Creditor has filed no proof of claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of claim, then to address reflected in the proof of claim.

        (b)     If to the Debtor or Reorganized Debtor, notice shall be sent to the following addresses:

> Dykema Gossett PLLC
> Attention: Mark E. Andrews or Jane A. Gerber
> 1717 Main Street, Suite 4200
> Dallas, TX 75201
> E-mail:  mandrews@dykema.com or jgerber@dykema.com
> Fax: (214) 462-6401
>
> AND
>
> Dykema Gossett PLLC
> Attention: Andrew Sherwood
> Weston Centre
> 112 E. Pecan Street, Suite 1800
> San Antonio, TX 78205
> E-mail: asherwood@dykema.com

Concurrently with service of such notice on the Debtor or Reorganized Debtor, a copy thereof shall be concurrently served in the same manner on the Bond Trustee's legal counsel as follows, unless otherwise required in the Confirmation Order:

> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> Attention: Kevin J. Walsh or Colleen A. Murphy
> One Financial Center
> Boston, MA 02111
> E-mail: kjwalsh@mintz.com or camurphy@mintz.com
> Fax:  (617) 542-2241

        (c)     If to the Post-Effective Date Residents' Committee, notice shall be sent to the following address:

Michael G. Colvard
Martin & Drought, P.C.
2500 Bank of America Plaza
300 Convent Street
San Antonio, TX 78205
E-mail: mcolvard@mdtlaw.com
Fax: (210) 227-7924

(d)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Debtor or the Reorganized Debtor of its new address in accordance with the terms of this Section 15.5 of this Plan.

(e)     Any notice given, made or sent as set forth above shall be in writing and effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) sent by facsimile to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

## 15.6.   **Compliance with All Applicable Laws.**

If notified by any governmental authority it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Reorganized Debtor.

## 15.7.   **Binding Effect.**

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after entry of the Confirmation Order, the provisions of this Plan shall bind every Holder of a Claim against or Interest in the Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claims of such Holder is impaired under this Plan and whether such Holder has accepted this Plan.

## 15.8.   **Governing Law, Interpretation.**

Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of this Plan and any Plan Documents without regard to conflicts of law.  This Plan shall control any inconsistent term or provision of any other Plan Documents, except as set forth in Section 15.4 above.

**15.9.    Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on or before the Effective Date, and thereafter as such statutory fees become due.

**15.10.    Filing of Additional Documents.**

On or before Substantial Consummation of this Plan, the Debtor or the Reorganized Debtor, as applicable, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**15.11.    Elections by the Reorganized Debtor.**

Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised by the Reorganized Debtor separately as to each Claim, Creditor or Person.

**15.12.    Release of Liens.**

Except as otherwise provided in this Plan or the Confirmation Order, all Liens against any of the Assets shall be deemed to be released, terminated and nullified; **provided, however**, that there shall be no release of any Liens against property securing the Bond Claim.

**15.13.    Dissolution of Committees and Post-Effective Date Residents' Committee.**

(a)    On the Effective Date, any Committee appointed by the U.S. Trustee, including the Committee of Unsecured Resident Creditors, shall dissolve and the members of such Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Case, **provided, however**, that the Residents' Committee shall become the Post-Effective Date Residents' Committee.

(b)    The Post-Effective Date Residents' Committee shall continue in existence until the earliest to occur of: (i) completion of the repairs and improvements paid for with Settlement Proceeds; (ii) a sale, refinancing, or affiliation of the Eden Facilities; and (iii) the two (2) year anniversary of the Effective Date of this Plan, whereupon the Post-Effective Date Residents' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Chapter 11 Case.

**15.14.    No Admissions.**

Notwithstanding anything in this Plan to the contrary, nothing in this Plan shall be deemed as an admission by the Debtor on behalf of the Estate with respect to any matter set forth in this Plan, including liability on any Claim.

### 15.15. **Plan Supplement.**

Any and all Exhibits, lists, or schedules not filed with this Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court not later than ten (10) days prior to the Plan Voting Deadline or such other filing deadline as may be approved by the Bankruptcy Court. Holders of Claims may also obtain a copy of the Plan Supplement upon written request to the Debtor. Notwithstanding the foregoing, the Debtor may amend the Plan Supplement and any attachments thereto, through and including the Confirmation Date.

[Signature Page Immediately Follows]

DATED:  April 29, 2019

Respectfully Submitted,

**EDEN HOME, INC., DEBTOR AND DEBTOR-IN-POSSESSION**

By:    _/s/ Lawrence Dahl_____
          Laurence Dahl
          Executive Director and Chief Executive Officer


**DYKEMA GOSSETT PLLC**

By: _/s/ Mark E. Andrews_____
      Mark E. Andrews

Mark E. Andrews (State Bar No. 01253520)
Andrew G. Sherwood (State Bar No. 24033061)
Aaron M. Kaufman (State Bar No. 24060067)
Jane A. Gerber (State Bar No. 24092416)
1717 Main Street, Suite 4200
Dallas, Texas  75201
(214) 462-6400
(214) 462-6401 (Fax)

**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**